FILED IN MY OFFICE
DISTRICT COURT CLERK
6/8/2016 1:24:06 PM
WELDON J. NEFF
C. Dianne McCoy

Case 1:16-cv-00957-MV-KBM   Document 1-2   Filed 08/25/16   Page 1 of 46

STATE OF NEW MEXICO
COUNTY OF SAN JUAN
ELEVENTH JUDICIAL DISTRICT COURT

Kimberly Christopherson
      Plaintiffs,

                                        | Exhibit 2 |

v

                                     No.:    D-1116-CV-2016-00713

STATE FARM INSURANCE,
      Defendant.

## PETITION FOR DECLARATORY JUDGMENT

      COMES NOW, Plaintiff by and through counsel Victor A. Titus, and for her Petition

states:

1.      Plaintiff is a resident of Weld County, Colorado.

2.      Defendant is a foreign insurance company licensed to do business in New Mexico.

3.      On March 31, 2015 there was in effect, a policy of insurance, between Plaintiff

      as insured and State Farm Insurance Company for Underinsured Motorist Claim

      which Plaintiff contracted when living in Colorado so Colorado law applies

      pursuant to CRS 10-4-609. (See Exhibit 1 hereto).

4.      On March 31, 2015 Plaintiff was involved in an ATV accident in San Juan

      County, New Mexico in which she was a passenger. (See police reports attached

      as Exhibit 2 ).

5.      At the time of the accident Plaintiff had $50,000.00 in Uninsured/Underinsured

      Motorist coverage . (See Exhibit 3 hereto ) See: Wilkeson v. State Farm 2014-

      NMCA-077.

6.      Demand has been made upon State Farm Insurance, for Uninsured/Underinsured

Motorist Coverage for coverage on the car owned by Plaintiff, as set out in

Exhibit 3 attached.

7.    Defendants have denied coverage for any Underinsured motorist coverage as set

out in Exhibit 4 attached hereto.

8.    Colorado law provides for UIM coverage with no offset as set out in the law

attached hereto as Exhibit 5.

9.    Plaintiff's damages exceed the $100,000.00 so State Farm should pay the $50,000

UIM Coverage without offset consistent with Colorado law.

10.   The Court should issue its declaratory order and judgment, pursuant to § 44-6-2

N.M.S.A. 1978 finding UIM Coverage by Defendant State Farm Insurance

enforcing the provisions of the policy to resolve the issue of damages payable

thereunder.

WHEREFORE, Plaintiffs pray the Court issue its declaratory order and judgment,

pursuant to § 44-6-2 N.M.S.A. 1978 finding UIM Coverage by State Farm Insurance to include

the Fifty Thousand Dollars ($50,000.00) in dispute and enforcing the provisions of the policy to

resolve the issue of damages payable thereunder.

## COUNT II

## VIOLATION OF THE NEW MEXICO UNFAIR PRACTICES ACT

11.   Plaintiff re-alleges the allegations contained in Paragraphs 1 through 10 above as

if fully set forth herein.

12.   Defendant's conduct violates § 57-12-1 et. Seq., NMSA (1978) which further

entitles Plaintiff to compensatory damages, attorney fees, costs and treble (triple)

damages.

13. Defendants acts have been in violation of the aforesaid statutes and was willful, grossly negligent, reckless, wanton, wrongful and in bad faith disregard of Plaintiff's rights.

**WHEREFORE**, Plaintiff demands judgement against and the following relief from the

Defendants:

    a.    General and consequential damages;

    b.    Exemplary damages in an amount to be proven at trial ;

    c.    Costs, attorney fees and other appropriate relief;

    d.    Pre and post judgement interest;

    e.    Such other and further relief as the Court deems just and proper.

## COUNT III

### VIOLATION OF THE NEW MEXICO INSURANCE PRACTICES ACT

14. Plaintiff re-alleges the allegations contained in paragraphs 1 - 13 as set out above.

15. Defendant's conduct violates §59A-16-1 to 59A-16-30 NMSA and entitles Plaintiff to compensatory damages, attorney fees and costs.

**WHEREFORE**, Plaintiff demands judgement against and the following relief from the

Defendants:

    a.    General and consequential damages;

    b.    Exemplary damages in an amount to be proven at trial ;

    c.    Costs, attorney fees and other appropriate relief;

    d.    Pre and post judgement interest;

    e.    Such other and further relief as the Court deems just and proper.

TITUS & MURPHY LAW FIRM

VICTOR A. TITUS
2021 E. 20th St.
Farmington, NM 87401
(505) 326-6503

K Christopherson = (P)

# Colorado Revised Statutes 2015

**10-4-609. Insurance protection against uninsured motorists - applicability.** (1) (a) No automobile liability or motor vehicle liability policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle licensed for highway use in this state unless coverage is provided therein or supplemental thereto, in limits for bodily injury or death set forth in section 42-7-103 (2), C.R.S., under provisions approved by the commissioner, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom; except that the named insured may reject such coverage in writing.

(b) This subsection (1) shall not apply to motor vehicle rental agreements or motor vehicle rental companies.

(c) The coverage described in paragraph (a) of this subsection (1) shall be in addition to any legal liability coverage and shall cover the difference, if any, between the amount of the limits of any legal liability coverage and the amount of the damages sustained, excluding exemplary damages, up to the maximum amount of the coverage obtained pursuant to this section. A single policy or endorsement for uninsured or underinsured motor vehicle coverage issued for a single premium covering multiple vehicles may be limited to applying once per accident. The amount of the coverage available pursuant to this section shall not be reduced by a setoff from any other coverage, including, but not limited to, legal liability insurance, medical payments coverage, health insurance, or other uninsured or underinsured motor vehicle insurance.

(2) Before the policy is issued or renewed, the insurer shall offer the named insured the right to obtain uninsured motorist coverage in an amount equal to the insured's bodily injury liability limits, but in no event shall the insurer be required to offer limits higher than the insured's bodily injury liability limits.

(3) Notwithstanding the provisions of subsection (2) of this section, after selection of limits by the insured or the exercise of the option not to purchase the coverages described in this section, no insurer nor any affiliated insurer shall be required to notify any policyholder in any renewal or replacement policy, as to the availability of such coverage or optional limits. However, the insured may, subject to the limitations expressed in this section, make a written request for additional coverage or coverage more extensive than that provided on a prior policy.

(4) Uninsured motorist coverage shall include coverage for damage for bodily injury or death that an insured is legally entitled to collect from the owner or driver of an underinsured motor vehicle. An underinsured motor vehicle is a land motor vehicle, the


EXHIBIT
1

ownership, maintenance, or use of which is insured or bonded for bodily injury or death at the time of the accident.

(5) (Deleted by amendment, L. 2007, p. 1921, § 2, effective January 1, 2008.)

(6) An alleged tortfeasor shall be deemed to be uninsured solely for the purpose of allowing the insured party to receive payment under uninsured motorist coverage, regardless of whether the alleged tortfeasor was actually insured, if:

(a) The alleged tortfeasor cannot be located for service of process after a reasonable attempt to serve the alleged tortfeasor; and

(b) (I) Service of process on the insurance carrier as authorized by section 42-7-414 (3), C.R.S., is determined by a court to be insufficient or ineffective after reasonable effort has failed; or

(II) (A) The report of a law enforcement agency investigating the motor vehicle accident fails to disclose the insurance company covering the alleged tortfeasor's motor vehicle; and

(B) The alleged tortfeasor's insurance coverage when the incident occurred is not actually known by the person attempting to serve process.

(7) Nothing in subsection (6) of this section voids the alleged tortfeasor's policy if the alleged tortfeasor was actually insured.

**SAN JUAN COUNTY SHERIFF**

REPORTING DEPARTMENT

**STATE OF NEW MEXICO**
**UNIFORM CRASH REPORT**
30133111

| | |
|---|---|
| ON PRIVATE PROPERTY | FATAL / PROPERTY DAMAGE |
| | INJURY |

| | |
|---|---|
| PROPERTY DAMAGE ONLY | UNDER 1500 |
| | 1500 OR MORE |

HIT AND RUN

Case Number: **2015-10984**

NMDOT:

CAD Num:

| CRASH DATE | MILITARY TIME | CITY (IF ENTERED) | AT INTERSECTION | COUNTY | TRIBAL LAND |
|---|---|---|---|---|---|
| 3/30/15 | 2200 | AZTEC | | SAN JUAN | Yes No |

| DAY OF WEEK | OCCURRED ON (ROUTE NO. OR NAME) |
|---|---|
| MONDAY | CR2755 |

| OTHER LOCATION | 1/4 | FEET | N NE E SE S SW W NW | USS50 |
| MILES | | X | |

FROM (AT OR NEAR INTERSECTION / LANDMARK / CLARITY LINE / INTERSECTION / MILEPOST)

| LAT | | LONG |

| CRASH OCCURRED | On Roadway / Off Roadway | CRASH CLASSIFICATION | Overturned | Other Bike | Pedestrian | Other Vehicle | Vehicle on Other Roadway | Parked Vehicle |
| | | | R.R. Train | Pedalcyclist | Animal | Fixed Object | Other Object |

| Analysis/Code |
| 01 |

| N NE NW S SE SW E W | CR2755 | LAT (DD/MM of Crash) | NO | FIXED SPEED | 25 | SAFE DISTANCE | 25 |

**Driver's Full Name (Last, First, Middle)**

| HOUSTON | TIFFANY | D | 101 CR2755 |
|---|---|---|---|

| Driver's License Number | STATE | TYPE | STATUS | RESTRICTIONS | ENDORSEMENTS | CITY | STATE | ZIP CODE | PHONE |
|---|---|---|---|---|---|---|---|---|---|
| 039964694 | NM | D | S | 00 | | 04/27 | AZTEC | NM | 87410 | 505-325-9382 |

| DATE OF BIRTH M/D/YR | | OCCUPATION | | SEX |
|---|---|---|---|---|
| 76 | | N/A | | LF |

<table>
<tr><td colspan="11">Vehicle No. 1</td></tr>
<tr><td></td><td></td><td></td><td></td><td></td><td>39</td><td>F</td><td>C</td><td>A</td><td>3</td><td>Y</td><td>NA</td><td>N</td><td>3</td><td>Y</td></tr>
<tr><td>RF</td><td>BLACKWELL RANDALL</td><td>15 CR1546</td><td>AZTEC</td><td>NM</td><td>87416</td><td>34</td><td>M</td><td>C</td><td>O</td><td>3</td><td>Y</td><td>NA</td><td>N</td><td>REF</td><td>N</td></tr>
<tr><td>RR</td><td>CHRISTOPHE KIMBERLY</td><td>817 ELIZABETH AVE</td><td>PLATTEVILL CO</td><td></td><td>80651</td><td>38</td><td>F</td><td>C</td><td>B</td><td></td><td>N</td><td>NA</td><td>N</td><td>PRI</td><td>Y</td></tr>
</table>

| Vehicle Yr | Vehicle Make | Color | Body Style | Large Body Type | Vehicle Use (1) | Vehicle Use (2) |
|---|---|---|---|---|---|---|
| 2014 | POLS | BLK | AV | | | |

| License Plate | License Plate Number | VIN |
|---|---|---|
| 2015 | NM | OHS8380 | 4XAWH57AXEE244593 |

| EXP | | Owned To | BLOOMFIELD TOWN 1300 W GALLEGOS | | |

| Est of Amount of Axles | Vehicle Weight Rating/Gross Combination Weight | Hazmat Placard 4 digit # | CMV Hazmat Name |
|---|---|---|---|

| Carrier Name | | Carrier Address |

| Owner's Name | Same As Driver | Owner's Company Name | Owner's Address |
|---|---|---|---|
| SPANGLER DAVID | | 101 CR2735 | AZTEC NM 87410 505-325-9832 |

| Insured By (Name of Company) | Policy Number |

<table>
<tr><td colspan="6">Vehicle No. 2 or PEDESTRIAN - OTHER</td></tr>
</table>

| Crash Report Number 30133111 | | EXHIBIT | OF NEW MEXICO UNIFORM CRASH REPORT | SHEET 1 |
| Case Number 2015-10984 | | Q2 | NM Statute 66-7-209 | OF 1 | SHEETS |

| | | | | | | | Crash Report Number |
|---|---|---|---|---|---|---|---|
| | | | | | | | 30133111 |

**Crash Report Number** 30133111

**Case Number** 2015-10904

### ROAD / WEATHER / LIGHTING / VISIBILITY section

- ☒ Clear
- ☐ Daylight
- ☐ Dawn
- ☐ Dusk
- ☐ Dark - Lighted
- ☒ Dark - Not Lighted
- ☐ Other and not determined

### EVENT section

V1 V2

### DRIVER section

O1 DC

☒ ... (checkboxes)

### NARRATIVE section

### OTHER PROPERTY INVOLVED

| Owner's Type | Description of Property and Damage | Owner's Address | Owner's Zip Code | Owner's Telephone |
|---|---|---|---|---|

### WITNESS

| NAME | AGE | ADDRESS | TELEPHONE |
|---|---|---|---|

### VIOLATIONS / CITATIONS

| | NAME | | | VIOLATION (CITATION NAME) | ACTION |
|---|---|---|---|---|---|
| V1 | HOUSTON | TIFFANY | D | SUSPENDED DRIVER'S LICENSE | ☐ Warned ☐ Cited ☒ Pending |
| V1 | HOUSTON | TIFFANY | D | OPERATING AN ATV ON A HIGHWAY | ☐ Booked ☐ Cited ☒ Pending |
| | | | | | ☐ Booked ☐ Cited ☐ Pending |

| Time Notified | Time Arrived | Notified By | Location on Scene | Decision By |
|---|---|---|---|---|
| 2212 | 2215 | DISPATCH | | DAVID PIXTON |

| Officer's Signature | Forms Officer's Name | Rank | ID No. | Badge | Date of Report |
|---|---|---|---|---|---|
| | DANIEL CHESSER | DEPUTY | S638 | 12 | 04/22/15 |

Crash Report Number 30133111
Case Number 2015-10984

STATE OF NEW MEXICO UNIFORM CRASH REPORT
NM Statute 66-7-209

SHEET 2 OF 4 SHEETS

# DIAGRAM/NARRATIVE
Use Additional Sheets As Necessary

**SYNOPSIS:**

On March 30, 2015, at approximately 2200 hours, I was dispatched to the area of CR2755 and US550 in reference to an ATV rollover with possible injuries.

Upon arrival, I saw a black and red ATV bearing New Mexico DMSB360; this vehicle hereafter will be referred to as V1. V1 was upside down facing south on the south side of CR2755. Medics was already on scene and the driver was loaded into the back of the ambulance and being treated for her injuries. V1 had moderate damage to the rear of the vehicle; the tailgate was leaning against the rear of V1. I also observed scratches all over V1, along with a lot of debris around the vehicle. There were several bottles that smelled of an alcoholic beverage.

**DRIVER STATEMENTS:**

The driver of V1 was identified as Houston, Tiffany DOB          1978. Tiffany will hereafter be refer red to as D1. D1 said she was driving south on CR2755 and she was going around the corner and hit the dirt. Then she felt the ATV start to turn over and it felt like it was in slow motion. Tiffany said she had a drink after dinner and two shots of Canadian Mist.

**WITNESS 1 STATEMENT 1:**

The passenger in the vehicle was identified as Blackwell, Randall DOB:          1980. Randall will her eafter be referred to as W1. W1 said all he remembers is him and Tiffany were remodeling the house all day and decided to go for a joy ride. W1 said they had been drinking beer at the house all day before they left for the joy ride, and he had about a six pack to drink.

**WITNESS 2 STATEMENT 1:**

The third passenger in the vehicle was identified as Christopherson, Kimberly DOB          1978. Kimbe rly hereafter will be referred to as W2. I spoke on the phone with W2 and she said she felt the scene to go find help after the accident. I asked her wh at had happened in the events leading up to the accident. W2 said W1 jumped in the driver's seat and D1 was in the passenger's seat. W2 said she was in the back seat on the passenger side. She said she thought they were just going to go down the road, but was never supposed to get on the paved road. She said she remembers asking W1 to slow down. The next thing W2 said was she was trying to put on her seat belt, but was unable to.

When V1 approached the sharp left hand corner, she closed her eyes and heard D1 scream "Randy". W2 said when she woke up she saw W2 laying on the ground and heard D1 screaming. W2 said her first thought was "I need to go get help." At that time, she said she called her husband for help. She said she did not even remember where she was at or even getting back to her home or how she got ther e.

**INVESTIGATION:**

The roadway where the accident occurred was gravel and the surface was flat, the roadway was dry, the weather was clear and it was approximately 2200 hours.

While on scene I observed a single tire track leave the roadway into the gravel approximately fort y feet west of were the ATV stopped upside down. At approximately thirty feet from the ATV I observed a second tire track leave the roadway, the tracks led directly to where the ATV was.

With the evidence provided on scene and D1 statement, D1 was headed south bound on CR2755 when she approached a sharp left hand corner. V1 began to leave the roadway and she was unable to get the vehicle back on the road. As she continued to go around the corner the driver side tires left the roadway and lost traction V1 started to slide sideways with the front of the vehicle facing south. V1 rolled one time, coming to a stop on its roof.

Deputy Howard performed the Horizontal Gaze Nystagmus test on Tiffany in the ambulance and did not find enough clues to charge her with a DWI.

**CAUSE:**

The cause of the crash was D1 was driving to faster than the posted speed limit and failed to negotiate the corner. The fact that D1 had consumed alcohol was a factor in the accident.

**ENFORCEMENT ACTION:**

D1 was issued a traffic citation for driving on a suspended driver's license. D1 was issued a cita tion for operating an ATV on a public road.

**INJURIES:**

D1 had a cut on her forehead and a possible dislocated left arm. Medics transported D1 to the ER f or evaluation.

W2 said she had to have 20 staples in the back of her head due to a laceration, nerve damage to he r lower back and she was having pain in her left hip after the accident. She was transported to the ER by her husband.

**VEHICLE INVOLVED:**

V1 was a 2014 black and red Polaris Ranger bearing DMSB360. V1 had moderate damage to the rear of the vehicle; the tail gate was leaning against the rear of V1. I also observed scratches all over V1. V1 was towed from the scene by Bloomfield towing to their yard at 1300 W. Gallegos Ln Bloomfield, NM 87013.

**OTHER PROPERTY INVOLVED:**

None.

**CASE STATUS:**

Closed.

Crash Report Number  30133113

Case Number 2015-10984

STATE OF NEW MEXICO UNIFORM **CRASH** REPORT
NM Statute 66-7-209

SHEET 3

OF 4   SHEETS



## DIAGRAM/NARRATIVE

Use Additional Sheets As Necessary

CASE #: 2015-10984   S. HOWARD #637     CRASH SUPPLEMENT

On 3/30/2015, myself and Deputy Chesser responded to CR3795 just west of the fire station in reference to a rollover crash involving an ATV. Deputy Chesser took the crash report and he and I interviewed the involved parties, Randall Blackwell and Tiffany Houston. Both individuals stated that Tiffany was driving at the time of the accident and both admitted to have been drinking prior to. Tiffany su stained injuries to her head, arm and shoulder, and was therefore being treated by medics on scene. She was unable to move around much due to the amount of pain that she was in. Therefore, I was only able to administer the HGN test, to which I only got two very faint clues. I did not go any further with the DWI investigatio n.

On 3/31/2015, at 1828 hours, I was contacted by Melanie Leahy in reference to the crash. She stated that her daughter, Kim Christopherson, was also in the accident, but fled the scene in fear of getting in trouble. Kim was driven to the ER by her husb and to have a large gash on the back of her head treated and ended up with 20 staples. Ms. Leahy went further to state that Randy was the one driving, but Tiffany covered up for him. Ms. Leahy is very upset that her daughter "could have been killed" and Randy lied and got away with it. She feels that Tiffany will continue to cover up for Randy to protect him from her dad (the RO of the vehicle) and Kim's family.

This report is to document the conversation I had with Ms. Leahy because she is insisting that some thing be done about it. I will update Deputy Chesser on the matter and attempt to follow up on it when I return to work later this week.

Case Status:

Pending

---

**STATE OF NEW MEXICO UNIFORM CRASH REPORT**
NM Statute 66-7-209

Sheet 4

Of 4     SHEETS

 **StateFarm**®        **Confirmation of Coverage**

<u>06-40Q3-750</u>
Claim Number

This policy is issued by:

☐ State Farm Mutual Automobile Insurance Company
☐ State Farm County Mutual Insurance Company of Texas
☒ State Farm Fire and Casualty Company
☐ State Farm Lloyds
☐ State Farm Indemnity Company
☐ State Farm Guaranty Insurance Company
☐ State Farm Florida Insurance Company

(Write in the name of the appropriate State Farm® affiliate)

This confirms that policy number 292484706, covering a(n) 2000 Ford F150, 1FTRX18L0YKB05578, was issued to Jesse D Christopherson and Kimberly Christopherson and was in effect on the accident date of March 30, 2015. The coverages and limits of liability for this policy on that date were:

A 50/100/50,C 5,000,D500,G500,H,U 50/100

Claim Team Manager

EXHIBIT
3

7/3/2014

 **StateFarm**™

## VEHICLE INFORMATION

**Review your policy information carefully.** If anything is incorrect, or if there are any changes, please let us know right away.

| Vehicle Description | Vehicle Identification Number (VIN) | Who principally drives this vehicle? | How is this vehicle normally used? National average: 12,000 miles driven annually per vehicle |
|---|---|---|---|
| 2000 FORD F150 | 1FTRX18L0YKB05578 | KIMBERLY CHRISTOPHERSON, a married female, who will be age 38 as of January 08, 2015. | To Work, School or Pleasure. Driven 7,500 miles or less annually. |

### Premium Adjustment

Each year, we review our medical payments and personal injury protection coverages claim experience to determine the vehicle safety discount that is applied to each make and model. In addition, we review the comprehensive, collision, bodily injury and property damage claim experience

annually to determine which makes and models have earned decreases or increases from State Farm's standard rates. If any changes result from our reviews, adjustments are reflected in the rates shown on this renewal notice.

## DRIVER INFORMATION

### Assigned Driver(s)

The following driver(s) are assigned to the vehicle(s) on this policy.

| Name | Age as of January 08, 2015 | Gender | Marital Status | Driver Record Level |
|---|---|---|---|---|
| KIMBERLY CHRISTOPHERSON | 38 | Female | Married | 01 |
| JESSE D CHRISTOPHERSON | 38 | Male | Married | 01 |

### Principal Driver & Assigned Drivers

For each automobile, the **Principal Driver** is the individual who most frequently drives it.
Each driver is designated as an **Assigned Driver** on the household automobile that he or she most frequently drives.

Your premium may be influenced by the information shown for these drivers.

## COVERAGE AND LIMITS See your policy for an explanation of these coverages.

| | | |
|---|---|---|
| A | Liability | |
| | Bodily Injury 50,000/100,000 | |
| | Property Damage 50,000 | $207.03 |
| C | Medical Payments 5,000 | $33.34 |
| D | 500 Deductible Comprehensive | $76.35 |
| G | 500 Deductible Collision | $110.56 |
| H | Emergency Road Service | $3.92 |
| U | Uninsured Motor Vehicle | |
| | Bodily Injury 50,000/100,000 | $37.53 |
| | | $468.73 |
| | Colorado Theft Prevention Authority Fee | $0.50 |
| **Total Premium** | | **$469.23** |



If any coverage you carry is changed to give broader protection with no additional premium charge, we will give you the broader protection without issuing a new policy, starting on the date we adopt the broader protection.

**DISCOUNTS** *These adjustments have already been applied to your premium.*

| | |
|---|---|
| 3-STAR | ✓ |
| Multiple Line | ✓ |
| Vehicle Safety | ✓ |
| Annual Mileage | ✓ |
| **Total Discounts** | **$487.34** |

## SURCHARGES AND DISCOUNTS

**AUTOMOBILE RATING PLAN** - Applies to private passenger cars only.

**3-Star Discount** - Your policy may be eligible for our 3-Star Discount. To qualify, assigned drivers must have had no at-fault accidents and no minor violation convictions during the past three years, and no major violation convictions during the past five years. There must also be at least one driver who has been licensed in the United States or Canada for at least three years, and the vehicles in your household must not have been driven without liability insurance in violation of any financial responsibility or compulsory insurance requirements.

**2-Star Discount** - If your policy does not qualify for our 3-Star Discount, the 2-Star Discount applies unless the insured vehicle (or the vehicle it replaced) has been driven during the last twelve months without liability insurance in

violation of any financial responsibility or compulsory insurance requirements.

**Driver Record Levels** - Based on accident and violation conviction records over the past three years, State Farm sets a Driver Record Level for each driver assigned to a car. The lowest level, which results in the lowest premium, is Driver Record Level 1. Accidents and violation convictions generally result in higher Driver Record Levels and higher premiums. We may adjust Driver Record Levels based on each driver's most recent driving record. If more than one driver is assigned to the same car, we consider each of their Driver Record Levels to determine the final premium.

These premium adjustments do not apply to all coverages. For complete program details, please contact your State Farm Agent.

## ADDITIONAL INFORMATION

If the above information is incomplete or inaccurate, or if you want to confirm the information we have in our records please contact your agent.

## Rates adjusted for auto insurance in Colorado

Auto insurance rates for Colorado customers have been adjusted to better reflect changing claim costs. Overall, most customers will see an increase in their premium. The amount your premium may have changed depends on many factors, including:

- the coverages you have
- where you live
- the kind of car you drive
- how the car is used
- who drives the car

Any premium adjustment is reflected on your enclosed billing notice. If you have any questions, please contact your agent.

# TITUS & MURPHY



THE

LAW FIRM

| INJURY CLAIMS | CRIMINAL DEFENSE |
|---|---|
| Auto  •  Oilfield  •  Work Comp | Felonies  •  Traffic  •  DUI |

An Association of Professional
Corporations:

VICTOR A. TITUS, PC
H. STEVEN MURPHY, PC
TYSON K GOBBLE, PC



PLEASE REPLY TO:
2021 E. 20th Street
Farmington, NM 87401
Telephone: (505) 326-6503
Facsimile: (505) 326-2672

September 23, 2015

Via Facsimile: 888-759-9032
Atten:Cathye Hudson
State Farm Insurance
PO Box 52282
Phoenix, AZ 85072

> Re:  Our Client / Your Insured        Kim Christopherson
>      Date of Accident:                3-30-15
>      claim #                          06-40Q3-750

Dear Ms. Hudson:

Enclosed please find Colorado Revised Statutes 2015. If you will review the
highlighted paragraph you will note that there is no longer an offset for recovery from the
torfeasor .

At this time we request that you tender the policy limits for the UIM coverage on Ms.
Christopherson's policies.

If you have any questions please feel free to contact me.

Sincerely,

VICTOR A. TITUS

VAT/kthm
xc:   Client



EXHIBIT
EX4

Also contact us at:            web address: www.titusmurphylawfirm.com            E-mail address: victor@titusmurphylawfirm.com

K Christopherson - (P)

# Colorado Revised Statutes 2015

**10-4-609. Insurance protection against uninsured motorists - applicability.**
(1) (a) No automobile liability or motor vehicle liability policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle licensed for highway use in this state unless coverage is provided therein or supplemental thereto, in limits for bodily injury or death set forth in section 42-7-103 (2), C.R.S., under provisions approved by the commissioner, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom; except that the named insured may reject such coverage in writing.

(b) This subsection (1) shall not apply to motor vehicle rental agreements or motor vehicle rental companies.

(c) The coverage described in paragraph (a) of this subsection (1) shall be in addition to any legal liability coverage and shall cover the difference, if any, between the amount of the limits of any legal liability coverage and the amount of the damages sustained, excluding exemplary damages, up to the maximum amount of the coverage obtained pursuant to this section. A single policy or endorsement for uninsured or underinsured motor vehicle coverage issued for a single premium covering multiple vehicles may be limited to applying once per accident. The amount of the coverage available pursuant to this section shall not be reduced by a setoff from any other coverage, including, but not limited to, legal liability insurance, medical payments coverage, health insurance, or other uninsured or underinsured motor vehicle insurance.

(2) Before the policy is issued or renewed, the insurer shall offer the named insured the right to obtain uninsured motorist coverage in an amount equal to the insured's bodily injury liability limits, but in no event shall the insurer be required to offer limits higher than the insured's bodily injury liability limits.

(3) Notwithstanding the provisions of subsection (2) of this section, after selection of limits by the insured or the exercise of the option not to purchase the coverages described in this section, no insurer nor any affiliated insurer shall be required to notify any policyholder in any renewal or replacement policy, as to the availability of such coverage or optional limits. However, the insured may, subject to the limitations expressed in this section, make a written request for additional coverage or coverage more extensive than that provided on a prior policy.

(4) Uninsured motorist coverage shall include coverage for damage for bodily injury or death that an insured is legally entitled to collect from the owner or driver of an underinsured motor vehicle. An underinsured motor vehicle is a land motor vehicle, the

ownership, maintenance, or use of which is insured or bonded for bodily injury or death at the time of the accident.

(5) (Deleted by amendment, L. 2007, p. 1921, § 2, effective January 1, 2008.)

(6) An alleged tortfeasor shall be deemed to be uninsured solely for the purpose of allowing the insured party to receive payment under uninsured motorist coverage, regardless of whether the alleged tortfeasor was actually insured, if:

(a) The alleged tortfeasor cannot be located for service of process after a reasonable attempt to serve the alleged tortfeasor; and

(b) (I) Service of process on the insurance carrier as authorized by section 42-7-414 (3), C.R.S., is determined by a court to be insufficient or ineffective after reasonable effort has failed; or

(II) (A) The report of a law enforcement agency investigating the motor vehicle accident fails to disclose the insurance company covering the alleged tortfeasor's motor vehicle; and

(B) The alleged tortfeasor's insurance coverage when the incident occurred is not actually known by the person attempting to serve process.

(7) Nothing in subsection (6) of this section voids the alleged tortfeasor's policy if the alleged tortfeasor was actually insured.

*Providing Insurance and Financial Services*
*Home Office, Bloomington, IL*

 **StateFarm**

September 24, 2015

Titus And Murphy
2021 W 20th St
Farmington NM 87401

State Farm Claims
PO Box 52282
Phoenix AZ 85072

RE:     Claim Number.     06-40Q3-750
        Date of Loss:      March 30, 2015
        Our Insured:       Kimberly Christopherson
        Claimant Name:

Mr. Titus:

We are in receipt of your letter dated September 25, 2015.

Please be advised under the terms of the policy for U/M UIM benefits, we are entitled to take a
full offset of payments made by the liability bodily injury carrier.

If you have any questions, we can be reached at the number below.

Sincerely,

Cathye Hudson
Claim Representative
(800) 324-0704 Ext. 38
Fax: (888) 759-9032

State Farm Fire and Casualty Company

XC:
Clent +
get Copy of
Policy

# TITUS & MURPHY

LAW FIRM

### INJURY CLAIMS
Auto • Oilfield • Work Comp

### CRIMINAL DEFENSE
Felonies • Traffic • DUI

An Association of Professional
Corporations:

VICTOR A. TITUS, PC
H. STEVEN MURPHY, PC
TYSON K GOBBLE, PC



PLEASE REPLY TO:
2021 E. 20th Street
Farmington, NM 87401
Telephone: (505) 326-4503
Facsimile: (505) 326-2672

November 4, 2015

State Farm Insurance
Cathye Hudson
PO Box 52282
Phoenix, AZ 85072

Re:     Our Client / Your Insured          Kim Christopherson
        Date of Accident:                  3-30-15
        claim #                            06-40Q3-750

Dear Ms. Hudson:

Enclosed please find medical records and bills for Ms. Christopherson per your request.

At this time we request that you review the enclosed documents and tender the policy limits for the UIM coverage on Ms. Christopherson's policies.

If you have any questions please feel free to contact me.

Sincerely,

Kimberly M Moore
Assistant to Victor A Titus

*Providing Insurance and Financial Services*
*Home Office, Bloomington, IL*  **StateFarm**

December 02, 2015

Titus And Murphy
2021 W 20th St
Farmington NM 87401

**State Farm Claims**
PO Box 52282
Phoenix AZ 85072

RE:   Claim Number:   06-40Q3-750
      Date of Loss:   March 30, 2015
      Our Insured:   Kimberly Christopherson
      Claimant Name:

Mr. Titus:

We are in receipt of your letter dated November 23, 2015.

Please be advised our file reflects your office was previously communicated Ms. Christopherson's UIM limits of $50,000. We received your demand package and are currently in the process of completing our evaluation.

We also  previously communicated to you our right to take a full offset for liability payments and Medical Payments coverage per your client's policy language. Enclosed you will find a copy of the policy as your requested. This information can be located on page 16 under the insuring agreement.

Please be advised we are reviewing the Colorado Statute referenced in your letter. We will get back to you once we have completed our review.

If you have any further questions, we can be reached at the number below.

Sincerely,

Cathye Hudson
Claim Representative
(800) 324-0704 Ext. 38
Fax: (888) 759-9032

State Farm Fire and Casualty Company

XC:
Chart

*Providing Insurance and Financial Services*
*Home Office, Bloomington, IL*

 **StateFarm**

December 17, 2015

Titus And Murphy
2021 W 20th St
Farmington NM 87401

State Farm Claims
PO Box 52282
Phoenix AZ 85072

RE:   Claim Number:    06-40Q3-750
      Date of Loss:      March 30, 2015
      Our Insured:       Kimberly Christopherson
      Claimant Name:

Mr. Titus:

We are writing concerning your client Kimberly Chrisjtopherson.

Please be advised we have completed the evaluation regarding her UIM claim.  We are still
researching the Co statute referenced in your 11-23-2015 letter.

We will contact you once we receive an answer to discuss settlement.

If you have any questions, we can be reached at the number below.

Sincerely,

Cathye Hudson
Claim Representative
(800) 324-0704 Ext. 38
Fax: (888) 759-9032

State Farm Fire and Casualty Company

*Providing Insurance and Financial Services*
*Home Office. Bloomington. IL*

 **StateFarm**®

January 11, 2016

Titus And Murphy
2021 W 20th St
Farmington NM 87401

State Farm Claims
PO Box 52282
Phoenix AZ 85072

RE:    Claim Number:    06-40Q3-750
       Date of Loss:     March 30, 2015
       Our Insured:      Kimberly Christopherson
       Claimant Name:

Mr. Titus:

We are writing concerning your client Kimberly Christopherson.

Please be advised we have completed our research regarding CO Statute 10-4-609. It upholds
our right under Ms. Christopherson's policy to take the offsets for Medical Payments Coverage,
and the underlying bodily injury payment.   The statute specifically states:

"The coverage described in paragraph (a) of this subsection (1) shall be in addition to any legal
liability coverage and shall cover the difference, if any, between the amount of the limits of any
legal liability coverage and the amount of the damages sustained, excluding exemplary
damages, up to the maximum amount of the coverage obtained pursuant to this section. A
single policy or endorsement for uninsured or underinsured motor vehicle coverage issued for a
single premium covering multiple vehicles may be limited to applying once per accident. The
amount of coverage available pursuant to this section shall not be reduced by a setoff from any
other coverage, including, but not limited to, legal liability insurance, medical payments
coverage, health insurance or other uninsured or underinsured motor vehicle coverage".

There is also no existing case law, that says State Farm's language or similar language asking
for a set-off somehow violates the statute, or public policy, and the Colorado Appellate Court in
Jordan v. Safeco Insurance Company of America, Inc., 348 P.3d 443 (Colo. App. 2013), has
confirmed this position and contains a good review of the statutory changes.

In short, a UIM policy stacks, but there is a set-off for the underlying policy.  Unless and until the
current appellate case is reversed, it remains good law, and we will take the appropriate offsets.

After application of the offsets to our evaluation of your client, there remains a balance of
$394.72.  However, I have received permission to settle the claim for $1000.00.

Please discuss with your client. We can be reached at the number below.

06-40Q3-750
Page 2
January 11, 2016

Sincerely,

Cathye Hudson
Claim Representative
(800) 324-0704 Ext. 38
Fax: (888) 759-9032

State Farm Fire and Casualty Company

Jordan v. Safeco Insurance Company of America, Inc., 348 P.3d 443 (2013)

2013 COA 47

KeyCite Yellow Flag - Negative Treatment

Distinguished by   Tubbs v. Farmers Insurance Exchange,   Colo.App.,
May 21, 2015

348 P.3d 443
Colorado Court of Appeals,
Div. VII.

Philip JORDAN and Roberta
Jordan, Plaintiffs–Appellants,

v.

SAFECO INSURANCE COMPANY OF
AMERICA, INC., Defendant–Appellee.

Court of Appeals No. 12CA0934
|
Announced March 28, 2013

## Synopsis

**Background:** Insureds who settled with tortfeasor for less
than the liability limits of tortfeasor's automobile insurance
policy, and whose claim against their own automobile insurer
for underinsured motorist (UIM) benefits was denied, brought
action against their insurer for, among other things, bad faith
breach of contract and unreasonable delay and denial of
payment of a claim for benefits. After insureds stipulated that
their damages did not exceed the liability limits of tortfeasor's
policy, the District Court, City and County of Denver, Ann
B. Frick, J., awarded summary judgment to insurer. Insureds
appealed, challenging only the award of summary judgment
as to their claim for unreasonable delay and denial of payment
of a claim for benefits.

**Holdings:** The Court of Appeals, J. Jones, J., held that:

[1] terms of insureds' policy unambiguously provided for
payment of UIM benefits only for damages above the
tortfeasor's insurance policy liability limit, and

[2] as matter of first impression in the state, policy provision
that limited UIM coverage to damages in excess of the
tortfeasor's policy limit did not conflict with amended UIM
statute.

Affirmed.

West Headnotes (11)

[1]    **Insurance**

⟜ Definitions in policies

In insurance contracts, terms appearing in bold
print usually have a special meaning defined
elsewhere in the policy.

Cases that cite this headnote

[2]    **Appeal and Error**

⟜ Cases Triable in Appellate Court

Court of Appeals reviews the interpretation of
an insurance contract de novo, employing well-
settled principles of contractual interpretation.

1 Cases that cite this headnote

[3]    **Insurance**

⟜ Intention

**Insurance**

⟜ Ambiguity, Uncertainty or Conflict

Court construes the plain language of an
insurance contract to fulfill the intent of
the insured and the insurer, and it resolves
ambiguities in favor of the insured.

1 Cases that cite this headnote

[4]    **Insurance**

⟜ Underinsurance; exhausted coverage

**Insurance**

⟜ Amounts payable in general

Terms of insureds' automobile insurance
policy unambiguously provided for payment of
underinsured motorist (UIM) benefits only for
damages above the tortfeasor's insurance policy
liability limit, and not for damages above the
amount actually paid by the tortfeasor's insurer
pursuant to a settlement but still less than the
policy limit; UIM coverage provision stated that
UIM benefits would be paid if the tortfeasor's
limits of liability "have been exhausted by
payment of judgments or settlements."

3 Cases that cite this headnote

**[5]  Insurance**
  ⬦ Underinsurance; exhausted coverage

**Insurance**
  ⬦ Amounts payable in general

Fact that automobile insurance policy defined "underinsured motor vehicle" as a vehicle covered by insurance, but for which the "amount paid for bodily injury" under such insurance "is not enough to pay the full amount the insured is legally entitled to recover as damages," did not entitle insureds who settled with tortfeasor's insurer for less than the policy limits of tortfeasor's insurance to recover underinsured motorist (UIM) benefits for their damages above the settlement amount but less than the tortfeasor's liability limits, where insureds' policy further conditioned payment of UIM benefits on exhaustion of the tortfeasor's policy limits.

Cases that cite this headnote

**[6]  Insurance**
  ⬦ Underinsurance; exhausted coverage

**Insurance**
  ⬦ Amounts payable in general

Underinsured motorist (UIM) provision in automobile insurance policy that limited coverage to damages in excess of the tortfeasor's liability policy limits did not conflict with amended version of UIM statute and, thus, was enforceable to prevent insureds who settled with tortfeasor's insurer for less than the limits of tortfeasor's policy from recovering UIM benefits for damages in excess of the settlement amount but less than the tortfeasor's policy limits; amended statute required UIM coverage to cover the difference, if any, between the "amount of the limits of any legal liability coverage and the amount of damages sustained" up to the insured's own coverage limits. Colo. Rev. Stat. Ann. § 10-4-609(1)(c)

3 Cases that cite this headnote

**[7]  Insurance**
  ⬦ Mandatory Coverage

**Insurance**
  ⬦ Risks, losses and exclusions in general

Even if an underinsured motorist (UIM) coverage provision in an automobile insurance policy is unambiguous, court may conclude that it is void if it conflicts with the UIM insurance statute by diluting, conditioning, or limiting coverage mandated thereby. Colo. Rev. Stat. Ann. § 10-4-609

Cases that cite this headnote

**[8]  Insurance**
  ⬦ Uninsured or Underinsured Motorist Coverage

Uninsured motorist statute is intended to ensure the widespread availability of protection to persons against financial losses caused by financially irresponsible motorists, but not to require full indemnification of losses suffered at the hands of uninsured or underinsured motorists under all circumstances. Colo. Rev. Stat. Ann. § 10-4-609

Cases that cite this headnote

**[9]  Courts**
  ⬦ Previous Decisions as Controlling or as Precedents

**Statutes**
  ⬦ Prior or existing law in general

**Statutes**
  ⬦ Other Statutes

Courts presume that the General Assembly has knowledge of existing statutes and relevant judicial decisions when it enacts legislation; thus, when a statute is amended, the previous judicial construction stands only to the extent that it remains unaffected by the amendment.

Cases that cite this headnote

**[10]  Insurance**
  ⬦ Necessity of Tort Liability

**Insurance**

⟶ Underinsurance; exhausted coverage

**Insurance**

⟶ Determination of Tort Liability; Actions and Settlements

Under amended version of underinsured motorist (UIM) statute, the insurer's obligation to pay benefits is triggered by exhaustion of the tortfeasor's limits of legal liability coverage, not necessarily any payment from or judgment against the tortfeasor. Colo. Rev. Stat. Ann. § 10-4-609(1)(c)

3 Cases that cite this headnote

**[11]** **Insurance**

⟶ Underinsurance; exhausted coverage

**Insurance**

⟶ Policy limits

**Insurance**

⟶ Credits, Deductions, and Offsets

Amendment to underinsured motorist (UIM) statute changed Colorado's UIM statutory scheme from a "reduction" approach, where UIM coverage was reduced by any payment received or judgment against the tortfeasor, to an "excess" approach, where UIM coverage is payable for damages exceeding the tortfeasor's liability policy limit, subject only to the UIM coverage limit in the insured's policy. Colo. Rev. Stat. Ann. § 10-4-609

4 Cases that cite this headnote

*444 City and County of Denver District Court No. 10CV7590, Honorable Ann B. Frick, Judge.

**Attorneys and Law Firms**

Roger Jatko, Parker, Colorado, for Plaintiffs-Appellants.

Dufford & Brown, P.C., Lawrence D. Stone, Christian D Hammond, Denver, Colorado, for Defendant-Appellee.

Roberts Levin Rosenberg PC, Michael J. Rosenberg, Denver, Colorado, for Amicus Curiae The Colorado Trial Lawyers Association.

**Opinion**

*445 Opinion by JUDGE J. JONES

¶ 1 Plaintiffs, Philip Jordan and Roberta Jordan, appeal the district court's summary judgment in favor of defendant, Safeco Insurance Company of America, Inc., on their claim that Safeco unreasonably denied them underinsured motorist benefits. We affirm.

¶ 2 Among the issues the Jordans raise is an issue of first impression in Colorado. Under section 10-4-609, C.R.S.2012, as amended effective January 1, 2008, may an insurer providing underinsured motorist (UIM) insurance deny an insured such coverage for the difference between the limit of the tortfeasor's liability insurance coverage and the amount of a settlement paid by the tortfeasor to the insured? We conclude that it may.

**I. Background**

¶ 3 In 2009, J.F., a minor driver, and the Jordans were involved in an automobile accident. The Jordans were injured, and they sued J.F. J.F.'s automobile insurance policy covered damages for injuries to others up to $100,000 per person or $300,000 per accident. Mr. and Mrs. Jordan settled their claims against J.F. for $60,000 and $38,500, respectively.

¶ 4 The Jordans sought UIM benefits under their policy with Safeco, asserting that the policy covers all damages unpaid under the settlements, up to the policy limit.[1] Safeco told the Jordans that their UIM coverage would be triggered only if either of them had damages exceeding the $100,000 liability limit of J.F.'s policy. Safeco valued Mr. Jordan's total damages from the accident at less than $100,000, and, although it is not clear from the record, we presume that Safeco similarly valued Mrs. Jordan's total damages at less than $100,000.

¶ 5 The Jordans sued Safeco, asserting claims for (1) common law bad faith breach of an insurance contract; (2) unreasonable delay and denial of payment of a claim for benefits in violation of sections 10-3-1115 and -1116, C.R.S.2012[2]; and (3) a deceptive trade practice in violation of the Colorado Consumer Protection Act (CCPA), sections 6-1-101 to -121, C.R.S.2012. The Jordans moved for summary judgment on their claim under sections 10-3-1115

and ~1116. Safeco moved for summary judgment on the bad faith claim and the claim under sections 10-3-1115 and ~1116. Subsequently, the Jordans stipulated that neither of them could prove damages in excess of $100,000, and the court granted the Jordans' motion to dismiss their third claim under the CCPA.

¶ 6 The district court granted Safeco's motion for summary judgment. The court determined that under amended section 10-4-609, the Jordans' claims were viable only if either Mr. or Mrs. Jordan could establish damages exceeding $100,000 (J.F.'s policy limit).[3] Given the Jordans' stipulation that neither of them could prove damages exceeding $100,000, the district court concluded that no genuine issue of material fact remained, and that Safeco was entitled to judgment as a matter of law.

¶ 7 On appeal, the Jordans challenge only the district court's grant of summary judgment in favor of Safeco on their second claim under sections 10-3-1115 and ~1116, and its refusal to grant them summary judgment on that claim. They concede that no material facts are disputed.

## II. Standard of Review

¶ 8 We review a grant of summary judgment de novo. *Shelter Mut. Ins. Co. v. Mid-Century Ins. Co.*, 246 P.3d 651, 667 (Colo.2011). Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment **\*446** as a matter of law. C.R.C.P. 56(c); *Amos v. Aspen Alps 123, LLC*, 2012 CO 46, ¶ 13, 280 P.3d 1256.

## III. Discussion

¶ 9 In challenging the district court's order granting summary judgment for Safeco and its refusal to grant their motion for summary judgment, the Jordans contend that Safeco unreasonably denied their UIM claim because payment was required by (1) the plain terms of the Safeco policy; and (2) section 10-4-609. We conclude, however, that Safeco's denial of coverage was legally permissible under both the clear language of the policy and the unambiguous terms of section 10-4-609. Therefore, Safeco did not unreasonably delay or deny a claim for payment of benefits in violation of sections 10-3-1115 and ~1116 as a matter of law.

### A. The Safeco Policy

[1] ¶ 10 The Safeco policy's UIM coverage provision (Part C, "INSURING AGREEMENT," section A) says that Safeco

> will pay damages under this coverage caused by an accident with an **underinsured motor vehicle** only if 1. or 2. below applies: 1. The limits of liability under any applicable bodily injury liability bonds or policies have been exhausted by payment of judgments or settlements, or 2. [not applicable].[4]

¶ 11 The policy later defines an underinsured motor vehicle (in Part C, "INSURING AGREEMENT," section C) as follows:

> "Underinsured motor vehicle" means a land motor vehicle, the ownership, maintenance or use of which is insured or bonded for bodily injury at the time of the accident, but the amount paid for bodily injury under such insurance or bonds is not enough to pay the full amount the insured is legally entitled to recover as damages.

¶ 12 And, as also relevant here, the UIM portion of the policy contains a provision regarding the effect of other insurance on UIM coverage (in Part C, "OTHER INSURANCE," section B). It states: "[UIM] Coverage shall be excess over all bodily injury liability bonds or policies applicable at the time of the accident."

[2]  [3] ¶ 13 We review the interpretation of an insurance contract de novo, employing "well-settled principles of contractual interpretation." *Allstate Ins. Co. v. Huizar*, 52 P.3d 816, 819 (Colo.2002); *accord Shelter Mut. Ins. Co.*, 246 P.3d at 666. We construe the plain language of the contract to fulfill the intent of the insured and the insurer, and we resolve ambiguities in favor of the insured. *Shelter Mut. Ins. Co.*, 246 P.3d at 666.

[4] ¶ 14 We agree with Safeco and the district court that the policy terms unambiguously provide for payment of UIM

benefits only for damages above the tortfeasor's insurance policy liability limit.

¶ 15 The relevant UIM coverage provision states that Safeco will pay UIM benefits if "the limits of liability ... have been exhausted by payment of judgments or settlements." These terms clearly restrict Safeco's UIM liability to amounts exceeding an underinsured tortfeasor's insurance policy's limit of liability. Contrary to the Jordans' assertion, the coverage provision does not say that the tortfeasor's limit of liability is deemed to be exhausted by the payment of any judgment or settlement, regardless of the amount. Rather, it plainly conditions payment of UIM benefits on exhaustion of the tortfeasor's limit of liability, however such exhaustion occurs. *See Birchfield v. Nationwide Ins.,* 317 Ark. 38, 875 S.W.2d 502, 503 (1994) (holding that similar language unambiguously required exhaustion of tortfeasor's policy limit before UIM coverage was available); *Hill v. Am. Family Mut. Ins. Co.,* 150 Idaho 619, 249 P.3d 812, 815–16 (2011) (noting that identical policy language is common in the insurance industry and holding that it unambiguously requires exhaustion of a tortfeasor's *447 policy limit before UIM coverage is available); *see also Union Ins. Co. v. Houtz,* 883 P.2d 1057, 1061 (Colo.1994) (mere disagreement regarding the interpretation of an insurance policy term does not create an ambiguity).

[5]  ¶ 16 Also contrary to the Jordans' assertion, the policy's definition of "underinsured motor vehicle" does not dictate a different conclusion. To be sure, a condition of UIM coverage under the policy is that the vehicle is underinsured, as defined in the policy. But, as noted, the coverage provision further conditions payment of UIM benefits – as relevant here, by requiring exhaustion of the tortfeasor's liability policy limit. The definition of "underinsured motor vehicle" does not negate that further condition.

¶ 17 The cases on which the Jordans rely primarily, *Freeman v. State Farm Mut. Auto. Ins. Co.,* 946 P.2d 584 (Colo.App.1997); *State Farm Mut. Auto. Ins. Co. v. Tye,* 931 P.2d 540 (Colo.App.1996); and *State Farm Mut. Auto. Ins. Co. v. Bencomo,* 873 P.2d 47 (Colo.App.1994), are distinguishable. In *Freeman* and *Bencomo,* the relevant policy provisions granted coverage once the limits of liability for all bodily injury policies had been "used up" by payments of settlements or judgments. *Freeman,* 946 P.2d at 585; *Bencomo,* 873 P.2d at 49. The divisions analyzed the meaning of those provisions in light of the former version of section 10–4–609. As discussed in Part III.B below, before the 2008

amendments to that section, subsection (5) of the statute required UIM coverage for damages in excess of amounts *paid* pursuant to a tortfeasor's liability policy. As amended, however, section 10–4–609 requires coverage for amounts in excess of a tortfeasor's liability policy limit.

¶ 18 *Tye* also relied on the prior version of section 10–4–609. The division expressly construed the phrase "paid or payable" in the UIM coverage provision there at issue in light of former subsection 10–4–609(5). *Tye,* 931 P.2d at 542–43.

¶ 19 The coverage provision at issue in this case does not include that same "used up" or "paid or payable" language at issue in the cases decided under the prior version of section 10–4–609. And, the policy here includes an additional relevant provision not mentioned in the earlier cases: namely, the "other insurance" provision in the UIM part of the policy, stating that "[UIM] Coverage shall be excess over all bodily injury liability bonds or policies applicable at the time of the accident." This provision, like the coverage provision, clearly indicates that UIM benefits are payable only after the limit of the tortfeasor's liability policy is exhausted. *See Apodaca v. Allstate Ins. Co.,* 255 P.3d 1099, 1103 (Colo.2011) (discussing "excess" insurance); *DiCocco v. Nat'l Gen. Ins. Co.,* 140 P.3d 314, 316 (Colo.App.2006) ("An excess insurer is one whose coverage of a given loss is activated only after the magnitude of the loss exceeds the limits of the applicable 'primary' insurance.").

¶ 20 And in any event, the prior version of section 10–4–609 does not apply to this case. Because the decisions in *Freeman, Tye,* and *Bencomo* were based in large part (perhaps entirely) on the prior version of section 10–4–609, they do not influence the outcome here.

## B. Section 10–4–609

[6]  ¶ 21 Next, the Jordans contend that under the current version of section 10–4–609, an insured's good-faith settlement with a tortfeasor necessarily "exhausts" the tortfeasor's liability limits. Thus, they argue, if their Safeco policy does not cover the difference between what they received in settlement and J.F.'s insurance policy liability limit, the condition on UIM coverage in the Safeco policy is unenforceable. We reject this contention.

[7]  ¶ 22 Even if a UIM coverage provision is unambiguous, we may conclude that it is void if it conflicts with the

UIM insurance statute by diluting, conditioning, or limiting coverage mandated thereby. *Farmers Ins. Exch. v. Anderson,* 260 P.3d 68, 75 (Colo.App.2010); *see DeHerrera v. Sentry Ins. Co.,* 30 P.3d 167, 173 (Colo.2001) ("An insurance contract that denies statutorily mandated coverage is void and unenforceable."). We perceive no such conflict here.

[8] ¶ 23 Section 10-4-609 is intended "to ensure the widespread availability of protection *448 to persons against financial losses caused by financially irresponsible motorists," *Apodaca v. Allstate Ins. Co.,* 232 P.3d 253, 259 (Colo.App.2009), *aff'd,* 255 P.3d 1099 (Colo.2011), but "not to 'require full indemnification of losses suffered at the hands of uninsured [or underinsured] motorists under all circumstances.'" *Roque v. Allstate Ins. Co.,* 2012 COA 10, ¶ 23, ––– P.3d ––––– (quoting in part *Terranova v. State Farm Mut. Auto. Ins. Co.,* 800 P.2d 58, 61 (Colo.1990)).

¶ 24 Before the 2008 amendments to section 10-4-609, subsection (5) thereof provided:

The maximum liability of the insurer under the uninsured motorist coverage provided shall be the lesser of:

(a) The difference between the limit of uninsured motorist coverage and the *amount paid* to the insured by or for any person or organization who may be held legally liable for the bodily injury; or

(b) The amount of damages sustained, but not recovered.

Ch. 92, sec. 1, § 10-4-609(5), 1983 Colo. Sess. Laws 455 (emphasis added).

¶ 25 Underinsured motor vehicles were defined, as relevant here, as vehicles insured for less than the uninsured motorist coverage under the insured's policy, or vehicles for which payments to persons other than the insured reduced coverage for the vehicle to less than the uninsured motorist coverage under the insured's policy. *See* Ch. 92, sec. 1, § 10-4-609(4), 1983 Colo. Sess. Laws 455.

¶ 26 Senate Bill 07-256, now codified at sections 10-4-609 and 10-4-418, [5] C.R.S.2012, amended the UIM statute, as relevant here, by (1) deleting subsection 10-4-609(5), noted above; (2) redefining an underinsured motor vehicle simply as a "land motor vehicle ... which is insured ... for bodily injury or death at the time of the accident," § 10-4-609(4); (3) increasing the UIM coverage an insurer must offer to an amount at least equal to the insured's bodily injury liability

limit, *see* § 10-4-609(2); and (4) adding subsection 10-4-609(1)(c), which provides, as relevant here:

> [Underinsured motorist coverage] shall be *in addition to any legal liability coverage* and shall cover the difference, if any, between the *amount of the limits of any legal liability coverage* and the amount of the damages sustained ... up to the maximum amount of the coverage obtained pursuant to this section.... The amount of the coverage available pursuant to this section shall not be reduced by a setoff from any other coverage ....

(Emphasis added.)

¶ 27 It is against this backdrop that we must consider the Jordans' statutory construction argument, and the three cases on which they again rely, *Freeman, Tye,* and *Bencomo.* Taken together, those cases stand for the proposition that UIM benefits must be provided for damages in excess of any amount paid by a tortfeasor in settlement or of any judgment against the tortfeasor. But, as discussed above, the statute which was the linchpin of the holdings in those cases, section 10-4-609, has since been changed materially.

[9] ¶ 28 We presume that the General Assembly has knowledge of existing statutes and relevant judicial decisions when it enacts legislation. *In re Miranda,* 2012 CO 69, ¶ 17, 289 P.3d 957; *Colo. Water Conservation Bd. v. City of Central,* 125 P.3d 424, 434 (Colo.2005). "Thus, when a statute is amended, the previous judicial construction stands only to the extent that it remains unaffected by the amendment." *People v. O'Donnell,* 926 P.2d 114, 115 (Colo.App.1996); *accord Rauschenberger v. Radetsky,* 745 P.2d 640, 643 (Colo.1987) ("When a statute is amended, the judicial construction previously placed upon the statute is deemed approved by the General Assembly to the extent that the provision remains unchanged.").

[10] ¶ 29 As noted, effective January 1, 2008 (before the effective date of the Jordans' policy and the accident in this case), the General Assembly repealed subsection *449 10-4-609(5), the portion of the statute requiring UIM coverage of the difference between the amount paid to an injured insured and the limit of the insured's UIM coverage. New subsection 10-4-609(1)(c) instead requires that UIM coverage "shall be

in addition to any legal liability coverage and shall cover the difference, if any, between the amount of the limits of any legal liability coverage and the amount of the damages sustained...." The amended statutory language is plain and unambiguous. The insurer's obligation to pay benefits is now triggered by exhaustion of the tortfeasor's "limits of ... legal liability coverage," not necessarily any payment from or judgment against the tortfeasor. *Vignola v. Gilman*, No. 2:10-CV-02099-PMP, 2013 WL 495504, at * 13 (D.Nev.2013) (interpreting § 10-4-609(1)(c)); *see Thyssenkrupp Safway, Inc. v. Hyland Hills Parks & Recreation Dist.*, 271 P.3d 587, 590 (Colo.App.2011) ("If the plain language of the statute is clear and unambiguous, we apply the statute as written, unless doing so leads to an absurd result."). Thus, *Freeman, Tye,* and *Bencomo* do not guide our construction of amended section 10-4-609.

[11] ¶ 30 Had the General Assembly intended to preserve UIM coverage for the gap between a settlement amount and a tortfeasor's liability policy limit, it could have incorporated the language from subsection 10-4-609(5), or similar language, into the amendments. It did not. Instead, it used materially different language plainly changing the meaning of the statute. Essentially, it changed Colorado's UIM statutory scheme from a "reduction" approach—where UIM coverage was reduced by any payment received or judgment against the tortfeasor—to an "excess" approach —where UIM coverage is payable for damages exceeding the tortfeasor's liability policy limit, subject only to the UIM coverage limit in the insured's policy. *See Curran v. Progressive Northwestern Ins. Co.*, 29 P.3d 829, 832 (Alaska 2001) (discussing the difference between the two approaches in the UIM context); *see also DiCocco,* 140 P.3d at 316 (defining an excess insurer). The excess approach is favored by many, perhaps most, states.

¶ 31 Nonetheless, the Jordans (and amicus curiae the Colorado Trial Lawyers Association) contend that interpreting subsection 10-4-609(1)(c) in this way leads to absurd results because that interpretation (1) creates a gap of uncovered damages in cases like this; (2) benefits insurers, in contravention of public policy; and (3) will encourage more litigation. We are not persuaded.

¶ 32 The facts of this case present a situation where the insureds may suffer a gap in coverage, and would have been better off under the old version of the statute. [8] But that is not an absurd result.

¶ 33 Courts in many other states have held that under UIM statutes (or former statutes, in the case of Minnesota) worded similarly to section 10-4-609(1)(c), insurers are required to pay UIM benefits, if at all, only when the insured's damages exceed the tortfeasor's liability policy limit; the UIM insurer is not required to pay for any gap in coverage. *See. e.g., Aetna Cas. & Sur. Co. v. Farrell*, 855 F.2d 146, 149-50 (3d Cir.1988) (applying New Jersey law); *Curran,* 29 P.3d at 832; *Country Mut. Ins. Co. v. Fonk,* 198 Ariz. 167, 7 P.3d 973, 976, 978 (Ariz.Ct.App.2000); *Taylor v. Gov't Employees Ins. Co.*, 90 Hawai'i 302, 978 P.2d 740, 752 (1999); *Hill,* 249 P.3d at 821; *Schmidt v. Clothier,* 338 N.W.2d 256, 261 (Minn.1983); *White v. Continental Ins. Co.,* 119 Nev. 114, 65 P.3d 1090, 1092 (2003); *Buzzard v. Farmers Ins. Co., Inc.,* 824 P.2d 1105, 1112 (Okla.1991); *D'Adamo v. Erie Ins. Exch.,* 4 A.3d 1090, 1095 (Pa.Super.Ct.2010); *Cobb v. Benjamin,* 325 S.C. 573, 482 S.E.2d 589, 590, 597 (S.C.Ct.App.1997); *Olivas v. State Farm Mut. Auto. Ins. Co.,* 850 S.W.2d 564, 565 (Tex.App.1993); *Hamilton v. Farmers Ins. Co. of Washington,* 107 Wash.2d 721,733 P.2d 213, 217 (1987). [7]

*450 ¶ 34 The court in *Schmidt* articulated the public policy reasons for not allowing an insured to recover the gap from the UIM insurer. If an insured could recover the gap from the UIM insurer, the insured would not have an incentive to obtain the best settlement from the tortfeasor, the tortfeasor (or the tortfeasor's insurer) would have less incentive to make its best offer, the UIM insurer would be placed at an unfair disadvantage because it would be liable without having any ability to control the insured's right to settle with the tortfeasor, and UIM claims processing would be delayed. 338 N.W.2d at 261; *see Bayle v. Erie Ins. Co.*, 441 Pa.Super. 103, 656 A.2d 941, 943 (1995) ("The statutorily mandated coverage for underinsured motorist benefits was not intended to permit the insured absolute and arbitrary discretion to determine how payment should be apportioned between his or her own insurance company and the tortfeasor's liability carrier.").

¶ 35 In essence, the Jordans (and amicus) contend that any interpretation of insurance statutes which could result in less coverage than was available under prior law must be against public policy. But the statute necessarily reflects public policy. *Hurley,* 90 Cal.Rptr.2d at 701. And the Jordans have not cited any authority for the proposition that the General Assembly cannot change the law in a way that, in some instances, may prove detrimental to insureds. We are not at liberty to impose any such policy restriction on the

actions of the General Assembly. *Hamill v. Cheley Colo. Camps, Inc.*, 262 P.3d 945, 954 (Colo.App.2011) (judiciary's role is to recognize and enforce public policy implemented by the General Assembly); *see Board of Cnty. Comm'r's v. Colo. Dep't of Pub. Health & Env't*, 218 P.3d 336, 343 n. 11 (Colo.2009) (public policy concerns are properly addressed to the General Assembly); *Scoggins v. Unigard Ins. Co.*, 869 P.2d 202, 205 (Colo.1994) ("We will not judicially legislate by reading a statute to accomplish something the plain language does not suggest, warrant[,] or mandate."); *see Curran*, 29 P.3d at 833 ("public policy can guide statutory construction but cannot override a clear and unequivocal statutory requirement").

¶ 36 As noted, the General Assembly's decision not to require coverage for the so-called gap serves legitimate policy interests. And we observe that, considered as a whole, the General Assembly's amendments to the UIM statute will, in most if not all cases, as discussed below, prove more beneficial to the insureds than prior law.

¶ 37 The new version of the UIM statute increases the amount of UIM coverage that an insurer must offer. § 10–4–609(2).[8] And, as discussed, a UIM insurer may no longer set off its liability, dollar for dollar, based on payments by or a judgment against a tortfeasor. § 10–4–609(1)(c).[9] For example, under *451 the old version of the statute, if both a tortfeasor's liability policy and an injured party's UIM policy had $50,000 limits, the injured party's total recovery could have been limited to $50,000. *See Vaccaro v Am. Family Ins. Gp.*, 2012 COA 9, ¶ 59, 275 P.3d 750 (under old version of the statute, when insured had a $100,000 UIM policy limit and recovered $25,000 from the tortfeasor, the insured retained only $75,000 in available UIM benefits); *see also Carlisle v. Farmers Ins. Exchange*, 946 P.2d 555, 558 (Colo.App.1997) ("Insurers are allowed ... to offset from UM/UIM coverage amounts received by an insured from a tortfeasor's liability carrier.... "). But under the new version of the statute, assuming the same policy limits, the insured may recover up to $100,000. Further, UIM insurers are now liable for coverage even if

the tortfeasor's liability coverage is greater than the UIM coverage. § 10–4–609(4).

¶ 38 Also, under the new statutory scheme, insurers of all potentially applicable UIM policies (such as those covering the vehicle, driver, passenger, or pedestrian) are liable for damages, as the policies must be allowed to "stack" -- that is, a second policy's coverage begins where the first policy's coverage leaves off, without reducing the amount of available recovery under the second policy. *See* § 10–4–609(1)(c); *Snell v. Progressive Preferred Ins. Co.*, 260 P.3d 37, 38 (Colo.App.2010) (discussing the amendments to § 10–4–609).

¶ 39 Nor are we swayed by the Jordans' argument that allowing insureds to be responsible for a gap in coverage will "coerce" insureds to sue, rather than settle with, tortfeasors. The amendments to section 10–4–609 do not diminish the factors that generally encourage settlement. And enforcing the plain language of the amended statute will eliminate litigation between insureds and insurers over the reasonableness of insureds' settlements with tortfeasors. In any event, we are not free to rewrite the statute because enforcement of the unambiguous language might lead to a marginal increase in litigation.

¶ 40 We conclude that the district court properly determined that, as a matter of law, Safeco was not obligated to pay UIM benefits to the Jordans. It follows that Safeco was entitled to summary judgment on the Jordans' claim under sections 10–3–1115 and –1116.

¶ 41 The judgment is affirmed.

JUDGE BERNARD and JUDGE RICHMAN concur.

**All Citations**

348 P.3d 443, 2013 COA 47

Footnotes

1    The terms "uninsured" and "underinsured" appear in tandem in both the insurance contract provision at issue and the statute at issue (section 10–4–609). Though section 10–4–609 is titled "insurance protection against uninsured motorists —applicability," it concerns both uninsured and underinsured motorist coverage. Throughout this opinion, we refer only to underinsured motorist benefits, because J.F. was not an uninsured motorist.

2    These statutes give an insured a cause of action against an insurer for unreasonable delay or denial of payment of a claim for benefits. The insured may recover "two times the covered benefit" and reasonable attorney fees and costs.

3    The Jordans' UIM coverage under the Safeco policy was limited to $100,000.

4    The terms appearing in bold type in this opinion appear in bold type in the policy. In insurance contracts, terms appearing in bold print usually have a special meaning defined elsewhere in the policy. See, e.g., Mid–Century Ins. Co. v. Robles, 271 P.3d 592, 595 n. 2 (Colo.App.2011) (noting that policy terms written in bold type are defined terms); Miller v. Ho Kun Yun, —— S.W.3d ——, ——, 2013 WL 427355, *5 (Mo. Ct.App. No. WD 74890, Feb. 5, 2013) (same, with respect to a UIM provision).

5    Subsection 10–4–418(2)(c), which had expressly permitted anti-stacking provisions in insurance contracts, was repealed by the bill.

6    As discussed below in footnote 7, we do not decide whether an insured must actually exhaust the limit of the tortfeasor's liability policy before being entitled to any UIM coverage. If so, there would not be a "gap" because the insurer would not be liable at all absent actual exhaustion of the tortfeasor's liability policy coverage.

7    It appears that every court to have addressed the issue of gap coverage under UIM statutes similar to amended section 10–4–609 has held that the UIM insurer is not liable for the gap. Some enforce exhaustion clauses similar to that in Safeco's policy to hold that the insurer does not have to pay any UIM benefits unless the tortfeasor's liability policy limit is actually exhausted, regardless whether the insured's damages exceed that limit. See, e.g., Farmers Ins. Exch. v. Hurley, 76 Cal.App.4th 797, 90 Cal.Rptr.2d 697, 699–702 (1999); Hill, 249 P.3d at 818 n. 5 (collecting cases upholding exhaustion clauses); Kurtz v. Erie Ins. Exch., 157 Md.App. 143, 849 A.2d 1050, 1053–55 (Md.Ct.Spec.App.2004). Other courts hold that such exhaustion clauses are unenforceable as against public policy, but also hold that the insurer is entitled to credit for the full amount of the tortfeasor's liability policy limit in all circumstances. See Hill, 249 P.3d at 818 (collecting cases holding the underinsurer may always credit the full amount of the tortfeasor's liability coverage against the insured's damages). Under either approach, the insurer is not liable for the difference between the tortfeasor's liability policy limit and any payment from or judgment against the tortfeasor. We need not decide in this case which approach is consistent with Colorado law because of the Jordans' stipulation that neither of them has damages exceeding J.F.'s liability policy limit of $100,000.

8    The insurer must offer UIM coverage. But the named insured may reject it in writing. § 10–4–609(1)(a).

9    This is the purpose of the last sentence of subsection 10–4–609(1)(c) ("The amount of coverage available pursuant to this section shall not be reduced by a setoff from any other coverage...."). Contrary to the Jordans' suggestion, that sentence does not mean that an insurer is liable for any amount above what an insured receives from a tortfeasor, regardless of the tortfeasor's liability policy limit. Such an interpretation would negate the first sentence of the subsection.

End of Document                                          © 2016 Thomson Reuters. No claim to original U.S. Government Works

# TITUS & MURPHY

LAW FIRM

| INJURY CLAIMS | | | CRIMINAL DEFENSE | | |
|---|---|---|---|---|---|
| Auto • Oilfield • Work Comp | | | Felonies • Traffic • DUI | | |

An Association of Professional
Corporations:

VICTOR A. TITUS, PC
H. STEVEN MURPHY, PC
TYSON K GOBBLE, PC



PLEASE REPLY TO:
2021 E. 20th Street
Farmington, NM 87401
Telephone: (505) 326-6503
Facsimile: (505) 326-2672

February 22, 2016

State Farm Insurance
Cathye Hudson, Claims Representative
PO Box 52282
Phoenix, AZ 85072

Re:    Our Client / Your Insured        Kim Christopherson
         Date of Accident:               3-30-15
         claim #                      06-40Q3-750

Dear Ms. Hudson:

Your letter citing to Jordan v. Safeco as a reason to say there is no limits because of offset is in error. Attached please find Tubbs v. Farmers 353 P.3d 924 (Colo App. 2015) which holds the 'exhaustion clause' mentioned in Jordan is contrary to Colorado public policy and is not permitted. Please re-evaluate your position and send us $50,000 in UIM still due.

Sincerely,

Victor A Titus

VAT/ron
xc client

Also contact us at:         web address: www.titusmurphylawfirm.com        E-mail address: victor@titusmurphylawfirm.com

COLORADO COURT OF APPEALS                                    **2015COA70**

Court of Appeals No. 14CA0782
Boulder County District Court No. 12CV30342
Honorable Andrew Hartman, Judge

Steffan Tubbs,

Plaintiff-Appellant,

v.

Farmers Insurance Exchange,

Defendant-Appellee.

## JUDGMENT REVERSED AND CASE
## REMANDED WITH DIRECTIONS

Division V
Opinion by JUDGE ASHBY
Román and Márquez*, JJ., concur

Announced May 21, 2015

Bachus & Schanker, LLC, J. Kyle Bachus, Denver, Colorado, for Plaintiff-Appellant

Hunter & Associates, Lisa M. Hungerford, Denver, Colorado, for Defendant-Appellee

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2014.

¶ 1    Plaintiff, Steffan Tubbs, appeals the district court's summary

judgment in favor of defendant, Farmers Insurance Exchange

(Farmers). We conclude that the plain language of Colorado's

uninsured/underinsured motorist (UIM) statute, section 10-4-

609(1)(c), C.R.S. 2014, prevents a UIM policy from requiring that

the insured party actually collect the maximum amount possible

from the tortfeasor's liability policy before triggering the insured's

own UIM coverage. Therefore, we reverse and remand.

## I. Background

¶ 2    Tubbs was involved in a car accident in California with

another driver. The accident was the other driver's fault and Tubbs

suffered damages. The other driver's auto insurance had a

$100,000 liability limit. Tubbs was insured by Farmers, and his

policy included UIM coverage with a limit of $500,000. The UIM

provision contains an exhaustion clause that provides, "[Farmers]

will pay under [the UIM] coverage only after the limits of all [the

liable party's] liability bonds or policies have been exhausted by the

payment of settlements or judgments."

¶ 3    Tubbs accepted a $30,000 settlement from the other driver.

He then sought to recover under his Farmers policy's UIM

provision, claiming that his total damages exceeded $100,000.
Farmers refused to pay benefits because Tubbs did not meet the
requirements of the UIM exhaustion clause.[1] Tubbs then filed this
action.

¶ 4      As relevant here, Farmers moved for summary judgment,
arguing that pursuant to *Jordan v. Safeco Insurance Company of
America, Inc.*, 2013 COA 47, the exhaustion clause is enforceable,
and Tubbs was therefore required to collect the full amount possible
under the other driver's liability limit ($100,000) before Farmers
was required to pay under the UIM provision. According to
Farmers, because Tubbs settled for only $30,000, the UIM benefits
were not triggered. The district court agreed and entered summary
judgment for Farmers.

## II. Preservation

¶ 5      On appeal, Tubbs argues that the exhaustion clause in the
UIM policy is void and unenforceable because it (1) violates section
10-4-609(1)(c) or, alternatively, (2) it dilutes, limits, or conditions
insurance coverage mandated by section 10-4-609(1)(c). Farmers

---

[1] Tubbs does not seek to recover from Farmers the $70,000
difference between the $30,000 settlement and the other driver's
$100,000 policy limit.

2

responds that although Tubbs preserved the argument that the
exhaustion clause is void because it violates the statute, he did not
preserve the argument that the clause is void because it dilutes,
limits, or conditions coverage mandated by the statute. We
disagree.

¶ 6      In his response opposing summary judgment Tubbs argued to
the district court that "[u]nder Colorado law, an insured is not
required to exhaust all underlying coverage as a condition
precedent to making a claim for UIM benefits." The district court
entered summary judgment based on its interpretation of the
*Jordan* division's analysis of section 10-4-609(1)(c). In doing so, the
district court specifically concluded that as a matter of law the
insurance contract could condition Tubbs's right to recovery under
the UIM provision on his receipt of the full liability limit of the other
driver's policy, and that such a condition is consistent with section
10-4-609(1)(c). Therefore, Tubbs's arguments are preserved and we
will address them. *See Berra v. Springer & Steinberg, P.C.,* 251 P.3d
567, 570 (Colo. App. 2010) ("[T]o preserve the issue for appeal all
that was needed was that the issue be brought to the attention of

3

the trial court and that the court be given an opportunity to rule on it.").

III. Farmers Not Entitled to Summary Judgment

¶ 7        We review a district court's grant of summary judgment de novo. *See ISG, LLC v. Ark. Valley Ditch Ass'n*, 120 P.3d 724, 730 (Colo. 2005). We will affirm a grant of summary judgment if, when viewing all the facts in the light most favorable to the nonmoving party, there are no disputed material facts and the moving party is entitled to judgment as a matter of law. *See Natural Energy Res. Co. v. Upper Gunnison River Water Conservancy Dist.*, 142 P.3d 1265, 1276 (Colo. 2006).

¶ 8        "[E]ven if a[n insurance] policy provision is unambiguous and negates coverage by its clear terms, it may nevertheless be rendered void and unenforceable if it violates public policy by attempting to dilute, condition, or limit coverage mandated by the uninsured motorist statute." *Farmers Ins. Exch. v. Anderson*, 260 P.3d 68, 75 (Colo. App. 2010).

¶ 9        Section 10-4-609(1)(c), the UIM statute, provides in pertinent part:

4

> [UIM coverage] shall be in addition to any legal
> liability coverage and shall cover the difference,
> if any, between the amount of the limits of any
> legal liability coverage and the amount of the
> damages sustained . . . up to the maximum
> amount of the coverage obtained pursuant to
> this section.

¶ 10    The plain and ordinary meaning of the statutory language

requires that UIM policies cover the difference between the damages

the insured party suffered and the limit of any liable party's legal

liability coverage, regardless of whether the insured party's recovery

from the liable party exhausted that limit. *See Vignola v. Gilman*,

No. 2:10-CV-02099-PMP, 2013 WL 495504, at *13 (D. Nev. Feb. 8,

2013) (For purposes of triggering UIM coverage, "it is irrelevant

whether and in what amount the insured recovers from the

underinsured motorist" based on the plain and unambiguous

language of section 10-4-609(1)(c).); *Young v. Brighton School Dist.

27J*, 2014 CO 32, ¶ 11 (when interpreting a statute, courts aim to

ascertain and give effect to the legislature's intent; if the plain

language of the statute demonstrates a clear legislative intent,

courts look no further). Moreover, by using the word "shall," the

General Assembly made this coverage mandatory. *See DiMarco v.

Dep't of Revenue*, 857 P.2d 1349, 1352 (Colo. App. 1993) ("[T]he

5

word 'shall' generally indicates that the General Assembly intended
the provision to be mandatory.").

¶ 11    As applied to the facts of this case, section 10-4-609(1)(c)
requires that Farmers cover Tubbs for damages he sustained in
excess of $100,000 (the other driver's legal liability limit), in an
amount up to $500,000 (the limit of Tubbs's UIM coverage),
regardless of how much, if any, he actually recovered under the
other driver's legal liability coverage. Even though the statute
mandates such coverage, the exhaustion clause in Tubbs's UIM
provision purports to condition UIM coverage on Tubbs actually
recovering the maximum amount under the other driver's legal
liability coverage. Because the exhaustion clause imposes a
condition precedent on coverage mandated by the statute, the
clause is void and unenforceable. *See Farmers*, 260 P.3d at 75.

¶ 12    We note that this conclusion is consistent with those of many
states' courts that have interpreted their own substantially similar
statutes. *See Hill v. Am. Family Mut. Ins. Co.*, 249 P.3d 812, 818
(Idaho 2011) (collecting cases that hold that exhaustion clauses are
unenforceable as against public policy). Generally, the states that
have found exhaustion clauses in insurance contracts to be

6

enforceable have done so because the statute specifically allowed or required UIM coverage to be conditioned on exhaustion of the liable party's liability limit. *See id.* at 818 n.5. Colorado's UIM statute contains no such allowance or requirement.

¶ 13     Farmers's reliance on *Jordan* for the proposition that the exhaustion clause is enforceable is misplaced. In *Jordan*, the plaintiff had a similar UIM policy and exhaustion clause, and similarly settled with the liable driver for less than the driver's legal liability limit. *See Jordan,* ¶¶ 3, 10-11. The plaintiff argued that he met the requirements of the exhaustion clause because, under section 10-4-609(1)(c), a good-faith settlement for less than the liable driver's legal liability limit necessarily exhausted that limit and triggered his own UIM coverage. *Id.* at ¶ 21. However, the parties in *Jordan* also stipulated that the plaintiff's damages were less than the liable driver's legal liability limit. *Id.* at ¶ 5.

¶ 14     The division held that, pursuant to section 10-4-609(1)(c), UIM policies do not cover damages up to the liable party's legal liability limit, and instead cover only damages in excess of that limit. *Id.* at ¶ 30. Consequently, the *Jordan* division had no reason to, and did not, address whether the exhaustion clause was enforceable.

7

Indeed, the division stated that it did "not decide whether an insured must actually exhaust the limit of the tortfeasor's liability policy before being entitled to any UIM coverage." *Id.* at ¶ 32 n.6. Instead, the parties' stipulation that the plaintiff's damages did not exceed the liable driver's liability limit precluded any UIM coverage, regardless of whether the exhaustion clause was enforceable. *Id.* at ¶ 30.

¶ 15    Unlike the plaintiff in *Jordan*, Tubbs claims damages in excess of $100,000. This claim compels us to reach the question that the *Jordan* division did not. In doing so, we conclude that the plain language of section 10-4-609(1)(c) renders any "actual exhaustion" requirement in a UIM policy void and unenforceable.

¶ 16    Farmers also argues that rendering the exhaustion clause void and unenforceable unfairly benefits the insured and the liable party's insurer by allowing that insurer to offer, and the insured to accept, a minimal settlement and then require the UIM insurer to cover the majority of the damages suffered. According to Farmers, this allows the insured "absolute and arbitrary discretion to determine how payment should be apportioned between his own insurance company and the tortfeasor's liability carrier." But, as

8

explained above, whether the insured recovers the full amount or
nothing at all from the liable party's insurer has no impact on the
UIM insurer's obligation to pay benefits. Regardless of what
amount, if any, the insured receives from the liable party, the UIM
insurer is only required to pay for damages in excess of the
tortfeasor's legal liability coverage limit. This is precisely the
coverage that the UIM insurer agreed to provide in exchange for a
premium.

¶ 17     Moreover, even if we agreed with Farmers that rendering the
exhaustion clause unenforceable was unfair, the plain language
that the legislature chose renders the exhaustion clause
unenforceable. And when the plain language of a statute clearly
evinces the legislature's intent, we must give effect to that intent.
See Young, ¶ 11.

¶ 18     Based on our conclusion that summary judgment was
inappropriate because the exhaustion clause is void and
unenforceable, we need not address Tubbs's argument that the
exhaustion clause is ambiguous.

IV. Conclusion

9

¶ 19    The summary judgment is reversed and the case is remanded

for further proceedings consistent with this opinion.

JUDGE ROMÁN and JUDGE MÁRQUEZ concur.

K Christopherson PI

Chapter 8

# Uninsured and Underinsured Motorist Claims in Colorado

## 8.01 INTRODUCTION - HISTORY

In 1965, the Colorado General Assembly mandated the offer of insurance protection against uninsured motorists (UM).[1] The concept of UM/UIM coverage is to provide a source of indemnification for an individual injured by a negligent motorist who has no liability or inadequate liability insurance. UM coverage provides Coloradans with a way to recover for injuries when they otherwise might have to attempt to collect from an uninsured, judgment proof tortfeasor. The legislature expanded in 1983 to include protection against underinsured motorist, and underinsured motorist (UIM) coverage became a part of uninsured motorist coverage.[2] UIM coverage provides a source of additional compensation when an insured suffers damages in excess of the policy limits of a tortfeasor who is inadequately insured. The legislature also made UM/UIM coverage available for property damage sustained through the negligence of an uninsured/underinsured motorist.[3]

Court decisions continued to shape UM/UIM coverage in the years that followed the enactment of the original statute. For example, appellate decisions addressed "type of vehicle" exclusions. "owned but uninsured under the policy" exclusions. "stacking" and other provisions that had a profound impact on plaintiffs' ultimate recovery.

---

[1] Motor Vehicle Finan. Respon. Act, Ch.91, Sec. 2, 1965 Colo. Sess. Laws 333, 334; C.R.S. § 72-1-219, renumbered to C.R.S. § 10-4-609 in 1979, and codified as amended at C.R.S. § 10-4-609.

[2] C.R.S. § 10-4-609(4).

[3] C.R.S. § 10-4-610.


EXHIBIT
5

Most importantly, after the demise of no-fault, the legislature's major amendment to the UM/UIM statute dramatically altered UM/UIM coverage and greatly increased the pool of funds from which the plaintiff may recoup his or her damages.[4] The amendment eliminated offsets of the underinsured driver's coverage and prohibited anti-stacking language, thus allowing an insured to combine multiple UM/UIM policies.

Additionally, other legislation profoundly reshaped an insured's recourse against an insurer who unreasonably denies or delays payment of first-party benefits, such as UM/UIM benefits.[5] This legislation made it unlawful to "unreasonably deny or delay payment of a claim for benefits owed to or on behalf of any first-party claimant"[6] gave the insured the right to recover "reasonable attorney fees and court costs and two times the covered benefit."[7]

UM/UIM claims are an interesting hybrid in that they are first-party insurance claims based on third-party liability – the liability of the tortfeasor. They involve both tort and contract issues. This duality is the source of much of the tension that exists in this area of law, and is most apparent with regard to statute of limitations, interest, bad faith and limitations on the defense in the UM/UIM context.

This chapter is intended to provide an overview of the operation of UM/UIM policy provisions, guidance to the practitioner in pursuing a UM/UIM claim, and information regarding recent developments in the law pertaining to UM/UIM claims in Colorado.

---

[4] *See* C.R.S. § 10-4-609, as amended, applicable to policies issued or renewed after January 2008, which is particularly significant after the loss of personal injury protection ("PIP") benefits upon the sunset of the no-fault statute.

[5] *See* C.R.S. §§ 10-3-1115 & 1116, effective August 5, 2008.

[6] C.R.S. §10-3-1115.

[7] C.R.S. §10-3-1116.

# 8.02 SCOPE OF COVERAGE

## A. Offer of Coverage

The Colorado UM/UIM statute is found in Colorado Revised Statute § 10-4-609. It requires insurance companies issuing automobile liability policies to include coverage for personal injuries caused by an uninsured or underinsured motorist. unless the named insured rejects this protection in writing.[8] The purpose of the UM/UIM statute is to ensure that Colorado motorists are "afforded an opportunity to protect themselves from losses resulting from the negligent conduct of financially irresponsible operators of motor vehicles."[9] The legislative intent in enacting the statute was "to assure the widespread availability to the insuring public" of such insurance protection.[10] Against this background, the court had held that an insurer has a duty to notify a person purchasing automobile liability coverage of the nature and purpose of UM/UIM protection.[11]

While this duty to inform and offer was described as a "onetime" duty, a legislative enactment effective after July 1991 required that the insurer offer new uninsured motorist coverage to an insured "if there is an increase in bodily injury liability limits and the limits of the uninsured motorist coverage would be less than such limits.[12] Accordingly, if the insured originally selected $25,000/$50,000 in liability and UM/UIM coverage (after proper notification). then raised his or her liability limits to $100,000/$300,000. the insurance carrier must be able to establish that it notified the insured of the right to purchase UM/UIM coverage in an amount coextensive with the bodily injury limits of $100,000/$300,000.[13] Similarly, if the named insured changes. the agent should offer UM/UIM coverage to the new named insured.[14] Otherwise. the additional coverage in conformity with the required offer may be incorporated into the policy by operation of law.[15]

When the policyholder does not reject UM/UIM protection. the provisions must. at a minimum, contain coverage against damages caused by an uninsured tortfeasor "in limits for bodily injury or death as set forth in section 42-7-103(2). . . ."[16] Accordingly. where the insured selects $25,000/$50,000

---

[8] C.R.S. §§ 10-4-609(1)(a) & 10-4-609(4). If there is more than one named insured. rejection by one named insured does not effectively reject for other named insureds unless express authority to do so is granted. *Johnson v. State Farm Mut. Auto Ins. Co.*. 2014 COA 135 (Oct. 2014).

[9] *Passananno v. Travelers Indem. Co.*. 882 P.2d 1312. 1321 (Colo. 1994).

[10] *Id.* at 1319.

[11] *Allstate Ins. Co. v. Parfrey*; 830 P.2d 905 (Colo. 1992).

[12] Originally set forth at C.R.S. § 10-4-712(3)(c)(I)(H) and now codified at C.R.S. § 10-4-623(3)(c)(II). *Pacheco v. Shelter Mut. Ins. Co.*. 583 F.3d 735 (10th Cir. 2009).

[13] *Pacheco*. 583 F.3d 735.

[14] *See Davis v. GuideOne Mut. Ins. Co.*. 297 P.3d 950 (Colo. App. 2012) (when new named insured on the policy. carrier was obligated to re-disclose PIP options).

[15] *See. e.g.. Richardson v. Farmers Ins. Exch..* 101 P.3d 1138 (Colo. App. 2004) (uses "stepdown" coverage in conformity with the required offer incorporated by operation of law).

[16] C.R.S. § 10-4-609(1)(a).