in bodily injury limits, the minimum UM/UIM limits that can be offered are $25,000 per person/$50,000 aggregate, in accordance with C.R.S. § 42-7-103(2), which establishes the minimums for bodily injury coverage.[17] However, under case law predating the amendment, the insurer is obligated to inform all potential insureds, even those considering purchasing the minimum bodily injury limits, and in a reasonable manner calculated to permit the insured to make an informed decision, of their right to purchase UM/UIM coverage at a level above the minimum statutory liability limits.[18]

In dispensing with the $100,000/$300,000 limitation on the insurance carrier's obligation to offer UM/UIM existing under the statute pre-amendment,[19] the language requiring the insurer to offer the insured "the right to obtain higher limits" was lost. The statute now requires the insurer to offer coverage in an amount equal to the insured's bodily injury limits.[20] However, it is likely that obligations set forth *Parfrey*[21] and *Loar*[22] remain unchanged, in accord the purpose and intent of the statute. This pre-amendment case law would suggest that the agent should inform the insured of the right to purchase liability coverage above the minimum to obtain UM/UIM coverage above the minimum.

An umbrella policy, which provided excess liability coverage including automobile coverage, was held not to be an "automobile liability or motor vehicle policy" within the meaning of the UM/UIM statute and did not require an offer of UM/UIM coverage.[23]

Whether an insurer has a duty to advise consumers that they only need insure one vehicle with UM/UIM coverage to enjoy such protection with regard to all their vehicles has turned on factors such as whether the policy has an "owned but not insured" exclusion or lists additional vehicles separately for UM/UIM coverage.[24] Courts seem to agree that continued inclusion of the "owned but not insured exclusion" post *DeHerrera v. Sentry Ins. Co.*[25] and *Jaimes v. State Farm Mut. Auto.*

---

[17] The Colorado Supreme Court has held that the intent of the legislature is satisfied by UM coverage that compensates a person injured by an uninsured motorist to the same extent as one injured by a motorist who is insured in compliance with the law. *Terranova v. State Farm Mut. Auto. Ins. Co.*, 800 P.2d 58 (Colo. 1990). See also *Alliance Mut. Cas. Co. v. Duerson*, 518 P.2d 1177 (Colo. 1974); *Union Ins. Co. v. Houtz*, 883 P.2d 1057 (Colo. 1994). Clients should be advised to purchase UM/UIM coverage at the highest level available to them, especially since PIP benefits are no longer available to buffer the damages resulting from injury. They should also consider an umbrella policy that specifically covers UM/UIM situations.

[18] *Loar v. State Farm Mut. Auto. Ins. Co.*, 143 P.3d 1083 (Colo. App. 2006); *Allstate Ins. Co. v. Parfrey*, 830 P.2d 905 (Colo. 1992).

[19] See C.R.S. § 10-4-609, as amended.

[20] C.R.S. § 10-4-609 (2), as amended.

[21] *Parfrey*, 830 P.2d 905.

[22] *Loar*, 143 P.3d 1083.

[23] *Apodaca v. Allstate Ins. Co.*, 232 P.3d 253 (Colo. App. 2009), aff'd, 255 P.3d 1099 (Colo. 2011).

[24] Compare *Wagner v. Travelers Prop. Cas. Co. of Am.*, 209 P.3d 1119 (Colo. App. 2008) and *Briggs v. Am. Nat'l Prop. & Cas. Co.*, 209 P.3d 1181 (Colo. App. 2009) with *Mullen v. Allstate Ins. Co.*, 232 P.3d 168 (Colo. App. 2009).

[25] *DeHerrera v. Sentry Ins. Co.*, 30 P.3d 167 (Colo. 2001).

Ins. Co.[26] is affirmatively misleading, and that other sources of duty to provide accurate information possibly include C.R.S. §§ 10-3-1101, 10-3-1104 and the Colorado Consumer Protection Act.[27] The statute provides, "A single policy or endorsement for uninsured or underinsured motor vehicle coverage issued for a single premium covering multiple vehicles may be limited to applying once per accident."[28]

## B. The Class of Persons Covered

An insurer must offer UM/UIM coverage to a class of persons at least as broad as the class covered for liability.[29] Offers, which attempt to narrow the class, will result in policy provisions that are impermissible and void.[30] For example, where an employer's auto insurance provided liability coverage for "users" of insured vehicles but attempted to limit UM/UIM coverage to "occupiers" of insured vehicles, the Colorado Supreme Court held the limitation to be void.[31]

An insured is entitled to recover UM/UIM benefits when a person who is at fault in a collision does not have any liability insurance, or where limits for liability coverage are less than the limits for UM/UIM insurance under the injured insured's own policy. The UM/UIM statute contains no provisions excluding protection for an insured based upon the vehicle an insured is using at the time of injury. Restrictions on UM/UIM coverage, such as those based upon the type of vehicle,[32] an "owned but not insured"[33] vehicle and "regularly used but not owned" vehicle, are unauthorized by statute and inconsistent with UM/UIM coverage, which protects persons, not vehicles.[34] Any restriction by a policy that purports to deny UM/UIM coverage based on use of a specific type of vehicle violates public policy and is void, even if requested by the insured.[35] UM/UIM insurance applies to a named insured, who did not reject coverage, and his or her resident relatives, subsequently injured in a collision caused by an underinsured motorist irrespective of the vehicle the injured insured occupies, and regardless of whether he or she is even occupying a vehicle when injured by

---

[26] *Jaimes v. State Farm Mut. Auto. Ins. Co.*, 53 P.3d 743 (Colo. App. 2002).

[27] *Briggs*, 209 P.3d 1181.

[28] C.R.S. § 10-4-609(1)(c).

[29] *Aetna Cas. & Sur. Co. v. McMichael*, 906 P.2d 92 (Colo. 1995); see also *DeHerrera*, 30 P.3d 167; *Richardson v. Farmers Ins. Exch.*, 101 P.3d 1138 (Colo. App. 2004); *Pacheco v. Shelter Mut. Ins. Co.*, 583 F.3d 735 (10th Cir. 2009). In *Am. Nat'l Gen. Ins. Co. v. Rivera*, 217 P.3d 1257 (Colo. App. 2007), the same principle was applied to other optional, mandatorily offered coverage, i.e., collision coverage (insured includes permissive user).

[30] *McMichael*, 906 P.2d 92.

[31] *Id.*

[32] *DeHerrera*, 30 P.3d 167; see also *Bernal v. Lumbermens Mut. Cas. Co.*, 97 P.3d 197 (Colo. App. 2003), cert. denied.

[33] *Jaimes*, 53 P.3d 743; *Pacheco*, 583 F.3d 735.

[34] See *DeHerrera* 30 P.3d 167; *Jaimes*, 53 P.3d 743.

[35] *Bernal*, 97 P.3d 197; but see, *Farmers Ins. Exch. v. Anderson*, 260 P.3d 68, 82-83 (Colo. App. 2010)(distinguishing "type of vehicle" restrictions from all "vehicle restrictions" applicable to classes of insureds, i.e., permissive user coverage may be tied to specific vehicles).

an uninsured or underinsured motorist.[36] Thus, UM/UIM coverage provides protection "whenever or wherever bodily injury is inflicted upon him by the negligence of an uninsured motorist."[37]

However, rather than permissive users and non-resident relative passengers enjoying UM/UIM protection when borrowing or occupying any motor vehicle described in the policy of the owner whose household has UM/UIM coverage, some courts suggest that UM/UIM protection attaches to this "class" of insured only if the "vehicle" is insured with UM/UIM coverage.[38] This premise, which did not appear to be directly challenged, also served as the basis to insurer's resisting certification in class action suits regarding the insurer's UM/UIM practice.[39]

It would seem to this author that where the named-insured owns a Ford, Chevy and Dodge, and does not reject UM/UIM coverage, the household enjoys UM/UIM coverage, irrespective of which vehicle was being used at the time of a collision. If the named insured happens to loan the Dodge, instead of the Ford, to a neighbor who is involved in a collision with an uninsured motorist, it would seem arbitrary to say that the UM/UIM premium and coverage was allocated only to the Ford for the purposes of protecting a permissive user, and that the Chevy and Dodge carried no such protection without payment of additional premium specific to those vehicles. Conceptually, to this author, the purchase of UM/UIM coverage should remain unallocated, and permissive users should be covered in any of the vehicles described in the policy.

## C. When Coverage is Ordinarily Unavailable

There are certain situations where UM/UIM coverage ordinarily is not available, notwithstanding the absence of a written rejection. For example, the law does not require self-insured common carriers, such as buses,[40] to provide UM/UIM coverage, but the injured party can collect under his or her own policy if he or she purchased that coverage. With respect to rental car companies, the Colorado Supreme Court held that they must offer UM/UIM coverage.[41] In essence, the court held that rental car companies are effectively an insurer required to offer a lessee the right to accept or reject uninsured motorist coverage.[42] The legislature responded by enacting legislation that

---

[36] *DeHerrera*, 30 P.3d 167; *McMichael*, 906 P.2d 92.

[37] *DeHerrera*, 30 P.3d 167 (quoting *Mullis v. State Farm Mut. Auto. Ins. Co.*, 252 So.2d 229, 236 (Fla. 1971)).

[38] *Anderson*, 260 P.3d 68; see Section 8.02.F.

[39] *Farmers Ins. Exch. v. Benzing*, 206 P.3d 812 (Colo. 2009); *Maxwell v. United Servs. Auto Ass'n*, 2014 COA 2 (Jan. 2014).

[40] *White ex rel Scott v. Reg'l Transp. Dist.*, 735 P.2d 218 (Colo. App. 1987).

[41] *Passamano v. Travelers Indem. Co.*, 882 P.2d 1312 (Colo. 1994), rev'g *Passamano v. Travelers Indem. Co.*, 835 P.2d 514 (Colo. App. 1991) on reh'g after initially affirming the decision.

[42] *Passamano*, 882 P.2d at 1322.

effectively overruled the court and exempts rental car companies from having to make UM/UIM coverage available to a prospective lessee.[43] Other exemptions based upon the definition of "policy" set forth in C.R.S. § 10-4-601(2) do not apply to C.R.S. § 10-4-609, but only to sections 10-4-601 to 608, which reflect separate enactments and must be read separately.[44]

### D. Motorcycles

The statute includes motorcycles in the definition of "vehicle" for requiring liability insurance.[45] Further, C.R.S. § 10-4-609(4) provides that UM coverage includes coverage for damage from an underinsured motor vehicle, which is defined as a "land motor vehicle." It follows that a person injured by a motorcycle can recover UM/UIM benefits under an automobile insurance policy covering him. The same is true if a person with UM/UIM protection under an auto policy rides on a motorcycle and suffers injury because of a collision with an uninsured/underinsured motorist. He or she is entitled to UM/UIM benefits.[46]

### E. Pedestrians

UM/UIM coverage also will be triggered where a pedestrian is struck by an uninsured or underinsured vehicle. If an uninsured motorist strikes a pedestrian, coverage exists if the pedestrian or the pedestrian's resident relative has his or her own UM/UIM policy.[47] While the policy covers a permissive user when the person is not occupying but still using the loaned vehicle, a pedestrian who is not a named insured or a resident relative of the named insured, may have no coverage when he or she is a pedestrian away from the non-owned vehicle.[48]

The Colorado Supreme Court explicitly found coverage for a named insured pedestrian when an uninsured thief, attempting to steal her car struck her during the attempt.[49]

In interpreting the provisions of a specific uninsured motorist policy, the court of appeals has held that a bicyclist is not a "pedestrian" where the policy provisions prohibited stacking of policies by a "pedestrian."[50]

---

[43] Now codified under C.R.S. § 10-4-609(1)(b).

[44] *Passamano*, 882 P.2d at 1321.

[45] C.R.S. § 10-4-601(6).

[46] *DeHerrera v. Sentry Ins. Co.*, 30 P.3d 167, 176 (Colo. 2001).

[47] *See, e.g., Smith v. Gov't Emp'ees Ins. Co.*, Case No. 09CV1520 (D. Colo. 2010).

[48] Compare *Aetna Cas & Sur Co. v. McMichael*, 906 P.2d 92 (Colo. 1995) with *Nelson v. Strode Motors*, 600 P.2d 74 (Colo. 1979). The court's conclusions in *Nelson* regarding a renter not being a named insured, however, were subsequently disavowed. See *Passamano*, 882 P.2d 1312 (Colo. 1994); *Brucha v Cruise Am., Inc.*, 53 P.3d 700 (Colo. App. 2001).

[49] *State Farm Mut. Auto Ins. Co. v. Nissen*, 851 P.2d 165 (Colo. 1993).

[50] *State Farm Mut. Auto Ins. Co. v. Stein*, 940 P.2d 384 (Colo. 1997).

### F. Permissive Users/ Passengers

Where insurance covers the vehicle for liability purposes, and "insured" includes "permissive users," the owner's policy for UM/UIM protection also covers permissive users of the described vehicle. UM/UIM protection attaches to nonresident relative permissive users if the specific involved vehicle is insured with UM/UIM coverage.[51] This would suggest that an insurance policy may tie UM/UIM coverage to whether a "vehicle" is covered for UM/UIM, rather than whether the household from which the car is borrowed has UM/UIM coverage. However, as many insurance carriers have moved to insuring the household with UM/UIM coverage, rather than the vehicles, it would follow that any car borrowed from such a family should also provide UM/UIM coverage to the permissive users under such a policy.[52]

Passengers permissively "use" a vehicle, both for liability purposes[53] as well as for UM/UIM purposes.[54] The UM/UIM policies in which owners or their resident relatives are named insureds also cover passengers.

A passenger can claim against only the liability provisions of the named insured's policy or the uninsured motorist coverage of the named insured's policy if the carrier denied coverage under the liability provisions.[55] The denial of coverage based on its exclusion of vehicles insured under liability coverage to the definition of uninsured motor vehicle is ineffective where the carrier denies liability coverage, for example, when the vehicle is operated by a thief who injures the insured.[56] However, such policy language is still effectively bars collecting under both the liability and underinsurance coverage of a single policy even post amendment.[57]

### G. Wrongful Death

An underinsured motorist killed a resident relative mother in a motor vehicle collision. The daughter was able to make a claim for UIM benefits against the decedent's policy, and, as a resident relative of the decedent, against her own policy (but a personal representative of the estate would be necessary if there were a claim for survival action damages against the decedent's policy).[58] Hence, a person who is an insured under the decedent's policy or his or her own policy as a resident relative of the decedent may make a UM/UIM claim on his or her own behalf.

---

[51] *Farmers Ins. Exch. v. Anderson*, 260 P.3d 68 (Colo. App. 2010). *See also Farmers Ins. Exch. v. Benzing*, 206 P.3d 812 (Colo. 2009); *Maxwell v. United Servs. Auto. Ass'n*, 2014 COA 2 (Jan 2, 2014).

[52] See 8.02(B).

[53] *Radil v Nat'l Union Fire Ins. Co. of Pittsburgh*, 207 P.3d 849 (Colo. App. 2008) (passenger can "use" a vehicle platform from which to commit a tort.)

[54] *Id.* (Plaintiff, riding in an underinsured vehicle, was "using" the vehicle.)

[55] *See, State Farm Mut. Auto. Ins. Co. v. Nissen*, 851 P.2d 165 (Colo. 1993).

[56] See Id.

[57] *Jacox v. Am. Fam. Mut. Ins. Co.*, 317 P.3d 1242 (Colo. App. 2012); *Rivera v. Am. Fam. Ins. Group*, 292 P.3d 1181 (Colo. App. 2012).

[58] *See McCord v. Affinity Ins. Group*, 13 P.3d 1224 (Colo. App. 2000).

Parents whose son did not reside with them and was not an insured under the policy could not recover for the death of their nonresident son under their own policy.[59] The wrongful death statute enumerates those persons entitled to collect damages as a result of a wrongful death caused by an uninsured or underinsured motorist.[60] However, where a minor daughter died intestate in a motor vehicle accident, the father who neither lived with, nor supported the daughter, was allowed to share in the UM benefits under the wrongful death statute, while in another case the court rejected that heirs not insured under the policy had any claim to UM coverage.[61] The parents of the deceased minor are not entitled to separate "per person" limits under the definition of "bodily injury" existing in many policies.[62]

The inflation-adjusted cap on noneconomic damages in a wrongful death action applies per claim, not per defendant.[63] However, if the plaintiff establishes the elements of felonious killing (as defined in C.R.S. § 13-11-803(1)(b)), the exception to the statutory cap on noneconomic damages of the wrongful death statute[64] applies, and there is no cap on UM/UIM benefits for noneconomic damages. This is true even without criminal charges or a conviction.[65]

### H. Loss of Consortium/Claims of Parents

Loss of consortium is a recognized tort in Colorado.[66] While loss of consortium is at times considered "derivative" for some purposes,[67] it is a separate and distinct claim.[68] Nevertheless, policy provisions that aggregate loss of consortium claims with the claims of the person primarily injured, and apply the limits of liability for one injured person, are permissible and are not a violation of public policy.[69] The language of the policy determines whether the claim is within the per person or aggregate limits of the policy.[70]

---

[59] *Jones v. AIU Ins. Co.*, 51 P.3d 1044 (Colo. App. 2001).

[60] *McCord*, 13 P.3d 1224.

[61] Compare *Brill v. Hughes*, 958 P.2d 529 (Colo. App. 1998) with *McCord*, 13 P.3d 1224. See also *Wieprzkowski v. State Farm Mut. Auto. Ins. Co.*, 976 P.2d 891 (Colo. App. 1999) (nonresident relative could not recover for her emotional zone of danger injuries, but court suggested nonresident relative is not barred from recovery of loss of consortium or wrongful death where legally entitled).

[62] See *Swan v. Farmers Ins. Exch.*, 140 P.3d 261 (Colo. App. 2006).

[63] *Lanahan v. Chi Psi Fraternity*, 175 P.3d 97 (Colo. 2008).

[64] C.R.S. § 13-21-203.

[65] *Est. of Wright ex rel. Wright v. United Servs. Auto. Ass'n*, 53 P.3d 683 (Colo. App. 2001).

[66] *Sparks v. Am. Fire and Indem. Co.*, 769 P.2d 501 (Colo. App. 1989); *Arguello v. State Farm Mut. Auto. Ins. Co.*, 599 P.2d 266 (Colo. App. 1979).

[67] *Spaur v. Allstate Ins. Co.*, 942 P.2d 1261. (Colo. App. 1996); *Lee v. Colo. Dept. of Health*, 718 P.2d 221 (Colo. 1986).

[68] See C.R.S. § 13-21-102.5; *Lee*, 718 P.2d 221; *Swan* 140 P.3d 261. See also *Williams v. State Farm Mut. Auto. Ins. Co.*, 195 P.3d 1158 (Colo. App. 2008).

[69] *Spaur*, 942 P.2d 1261.

[70] Compare *id.* and *Arguello*, 599 P.2d 266, with *Sparks*, 769 P.2d 501.

## Chapter 8.02: Uninsured and Underinsured Motorist Claims in Colorado

Parental claims arising from medical expenses attributable to a minor child's injuries are not independent of the per person coverage limit under UM/UIM provisions.[71] Medical expenses paid on behalf of a minor child were derivative of a separate bodily injury to the minor.[72]

### I. Property Damage

In 1988, the legislature first enacted the Uninsured Motorist Property Damage statute (UMPD).[73] The coverage protects an insured against property damage caused by an uninsured motorist. Under C.R.S. § 10-4-610, insurance companies are required to make UMPD coverage available to insureds who request it and do not carry collision insurance. Unlike UM/UIM coverage, UMPD need not be offered and specifically rejected by the insured. The statute merely states that if the policy does not include collision coverage, the companies must provide it at the insured's request. The policy limit of the coverage is the actual cash value of the vehicle or the cost of repair or replacement, whichever is less. Like UM/UIM coverage, UMPD coverage is fault-oriented in that the insured must be legally entitled to collect from the operator of an uninsured motor vehicle. However, unlike claims for bodily injury, there must have been actual physical contact with another motor vehicle. "Miss-and-run" scenarios do not trigger UMPD coverage.

### J. Unknown or Unidentified Motorist/Immune Tortfeasor

Coverage for a collision caused by an uninsured/underinsured motorist applies where a motorist does not have liability insurance, or does not have sufficient liability limits to cover the damages sustained by the plaintiff. UM/UIM protection, however, extends beyond the obvious scenarios. For instance, UM/UIM coverage is available in "hit-and-run" and "miss-and-run" accidents (where the insurance situation of the tortfeasor is unknown). The statutes do not address this protection specifically; case law created it.[74] The definition of a hit-and-run collision is self-explanatory, whereas a miss-and-run might not be immediately apparent. An example of a miss-and-run accident is a situation where an insured, proceeding with care down the highway, observes another vehicle suddenly veering into his or her lane. While taking evasive action, the insured loses control of the vehicle and suffers bodily injury upon striking an embankment. The tortfeasor keeps going and remains unidentified either unaware of the accident or refusing to accept responsibility.

It is inappropriate for policies to contain provisions requiring physical contact with another vehicle.[75] UM claims for "miss-and-run" accidents present difficulties in proof. However, insurance clauses that require corroboration of the incident from persons other than those making the claim for UM coverage are void as against public policy.[76] The continuing vitality of case law

---

[71] *Kinsella v. Farmers Ins. Exch.*, 826 P.2d 433 (Colo. App. 1992).

[72] *Id.*

[73] C.R.S. § 10-4-610.

[74] *See, e.g., Farmers Ins. Exch. v. McDermott*, 527 P.2d 918 (Colo. App. 1974).

[75] *Id.* The court held that policy provisions requiring physical contact are void and against public policy

[76] *Alanushev v. Windsor Ins. Co.*, 72 P.3d 469 (Colo. App. 2003).

that approves of policies requiring victims to report hit-and-run accidents to the police within 24 hours is questionable.[77] This requirement should, at a minimum, be tempered to the extent that, once it has been established that the insured unreasonably provided delayed notice, the insurer must prove by a preponderance of the evidence that it was prejudiced by the delay.[78]

A tortfeasor, unidentified through the fault of the insured, will not trigger UM/UIM coverage even though unknown motorists in hit-and-run or miss-and-run situations will result in a viable UM/UIM claim. An example is the failure of the insured to obtain adequate information from a tortfeasor at the time of the accident where it was practical for the insured to have done so. If the insured fails to obtain driver's license information or license plate identification when presented with the opportunity to do so, he or she may properly be denied UM/UIM benefits.[79]

A driver may be "uninsured" when the tortfeasor prevents the insured from obtaining information concerning his or her identification following an accident.[80] But, a tortfeasor, who had complying insurance at the time of the auto accident, does not become "uninsured" for purposes of a UM claim when the claimant cannot obtain service of the complaint on the tortfeasor.[81]

As with accidents involving unknown motorists, if the tortfeasor is immune from liability (for example because of the Colorado Governmental Immunity Act), UM coverage applies for the benefit of the innocent injured driver.[82]

However, where an independent contractor fails to obtain his own workers' compensation insurance when he or she could have, he or she may recover no more than $15,000 in damages from the UM/UIM carrier of the employer of a tortfeasor who is in the same employ as the independent contractor.[83]

### K. Insolvent Carriers

By case law, UM/UIM coverage also applies where a liability carrier is insolvent.[84] Insolvent carriers are a rarity in actual practice, but such situations do arise. The Colorado Insurance Guaranty Association Act[85] provides a method of recovery where an insured cannot recover due to the insolvency of a carrier, but the insured must first exhaust his or her rights under any other cover-

---

[77] See *Shelter Mut. Ins. Co. v. Selley*, 942 P.2d 1370 (Colo. App. 1997).

[78] See *Clementi v. Nationwide Mut. Fire Ins. Co.*, 16 P.3d 223 (Colo. 2001).

[79] See *Tuenge v. Travelers Ins. Co.*, 89 CA 368 (Colo. App. 1990) (not selected for publication). The tortfeasor could not be located because the insured did not write down the car tags or otherwise obtain the driver's license number of the tortfeasor.

[80] *White v. Farmers Ins. Exch.*, 946 P.2d 598 (Colo. App. 1997) (noting that questions of fact in that case prevented summary judgment in favor of the claimant that the other driver was "uninsured").

[81] *Claire v. State Farm Mut. Auto Ins. Co.*, 973 P.2d 686 (Colo. App. 1998).

[82] *Borjas v. State Farm Mut. Auto. Ins. Co.*, 33 P.3d 1265 (Colo. App. 2001).

[83] *Cont'l Divide Ins. Co. v. Dickinson*, 179 P.3d 202 (Colo. App. 2007), *cert. denied.*

[84] *Morgan v. Farmers Ins. Exch.*, 511 P.2d 902 (Colo. 1973).

[85] C.R.S. § 10-4-501 to 520.

Chapter 8.02: Uninsured and Underinsured Motorist Claims in Colorado

age available. This means that, where available, one must proceed against his or her own UM coverage before looking to the state guaranty fund.[86] The state guaranty fund may also assert rights against "double recovery" that could not be properly asserted by the insurance carrier.[87]

Where the insolvent carrier's limits are greater than the insured's limits, the insured can then recover the difference from the guaranty fund to the extent of his or her damages up to the guaranty fund limits.[88] This does not mean that the insured must exhaust the policy limits of any other available insurance, if settling for something less than the policy limits is reasonable under the circumstances.[89] However, the total amount of the UM limits will be deducted from the insolvent carrier's limits in determining the amount available from the guaranty fund.[90]

### L. When Coverage is Denied for Tortfeasor

Most insurance policies also allow recovery under UM/UIM provisions if the tortfeasor's carrier denies coverage. Logically, the statute would require this result; once the company denies coverage, the tortfeasor is effectively uninsured.[91] An insurer may deny coverage for a number of reasons. For example, most policies require that the policyholder cooperate in his or her own defense. If the tortfeasor refuses to honor the reasonable requests of the insurer with regard to matters material to the defense, then the carrier may refuse to provide liability coverage. This would trigger UM/UIM coverage.[92] Similarly, liability policies almost universally deny coverage when the act of the insured is criminal or intentional. UM coverage is available under these circumstances.[93]

### M. Unusual Situations Regarding "Use" and "Caused by Accident"

The Colorado appellate courts have passed on interesting factual variations on traditional UM/UIM liability. Where an insured attempted to stop the theft of her vehicle, and the vehicle caused her injury, the court held that UM/UIM benefits were available.[94] The thief was not a permissive user, thus denial of liability coverage rendered the vehicle uninsured. Citing the legislature's intent that innocent victims

---

[86] C.R.S. § 10-4-512; *Colorado Ins. Guar. Ass'n v. Harris*, 827 P.2d 1139 (Colo. 1992), *aff'g*, 815 P.2d 983 (Colo. App. 1991).

[87] *Colo. Guar. Ass'n v. Menor*, 163 P.3d 205 (Colo. App. 2007).

[88] The guaranty fund's limits of are established by C.R.S. § 10-4-508.

[89] *Harris*, 827 P.2d 1139. The court in *Harris* noted it was more cost effective to settle for $2,500 less than the policy limits than it would be to litigate over that sum. *See also State Farm Mut. Auto. Ins. Co. v. Bencomo*, 873 P.2d 47 (Colo. App. 1994).

[90] *Harris*, 827 P.2d 1139.

[91] *State Farm Mut. Auto. Ins. Co. v. Nissen*, 851 P.2d 165 (Colo. 1993); *see also Radil v. Nat'l Union Fire Ins. Co. of Pittsburgh (Radil I)* 207 P.3d 849 (Colo. App. 2008).

[92] *State Farm Mut. Auto. Ins. Co. v. Secrist*, 33 P.3d 1272 (Colo. App. 2001).

[93] *State Farm Mut. Auto. Ins. Co. v. McMillan*, 900 P.2d 1243 (Colo. App. 1994), *aff'd*, 925 P.2d 785 (Colo. 1996); *State Farm Mut. Auto. Ins. Co. v. Tye*, 931 P.2d 540 (Colo. App. 1996).

[94] *Nissen*, 851 P.2d 165.

should have a remedy when damaged by an uninsured motorist, the court held that the UM coverage was not excluded by the conflicting exclusion in the policy.[95]

Further, a tortfeasor's use of a vehicle in a shooting incident may trigger UM/UIM coverage. The applicable analysis is rooted in causation. Courts must consider whether the facts establish a sufficient nexus between the tortfeasor's use of the motor vehicle and the resulting damages.[96] This arises from standard policy language requiring that damages result from the "operation or use of a motor vehicle."[97] For example, using a truck with an overhead beacon and emergency flashers as a barrier and warning device relates integrally to the claimant's activities at time of injury, while parking a vehicle in the median to assist others is not a use of a vehicle that relates integrally to the activities.[98]

However, in one sexual assault involving the use of a motor vehicle, the court did not find a sufficient causal connection with the insured's injuries and the vehicle to give rise to UM coverage. This was despite the use of the reclining passenger seat to prevent the victim from signaling for help, use of the vehicle to get to an isolated area and use of the automatic seatbelt as restraints.[99] The court stated that 1) the use must be foreseeable with the inherent purpose of a motor vehicle, and 2) that there must exist a causal connection (something more than "but for" and less than proximate cause) between the use and the injury.[100]

The tortfeasor used his car to block the parked car occupied by the plaintiffs. The court of appeals found, in a case it framed as "road rage," that, his act of getting out of his car before striking the plaintiffs with a golf club was an "independent significant act or non-use" of his vehicle that broke the causal connection required for the plaintiffs to recover under UM coverage.[101]

After the Colorado Supreme Court declined to answer a question certified by the 10th Circuit Court of Appeals to obtain clarification of state law on this issue of "use" of a motor vehicle, the 10th Circuit Court of Appeals applied the *Kastner* standards to find no coverage where a vehicle chase ended in a shooting.[102]

---

[95] *Id.* Although the court does not indicate whether the thief carried any insurance, it is a reasonable assumption that he did not. But given the criminal nature of the thief's acts, his carrier would undoubtedly have denied coverage anyway. This would have placed the plaintiff in a denial of coverage situation, entitling her to UM benefits.

[96] *Cung La v. State Farm Mut. Auto. Ins. Co.*, 830 P.2d 1007 (Colo. 1992). The plaintiff was injured when three cars "boxed him in" while driving on Interstate 70. A gunshot from one of the vehicles hit him. Citing typical policy and statutory language, the court held that UM coverage would apply if the injuries could be said to have arisen "out of the operation, maintenance or use of an uninsured motor vehicle." In *Cung La*, the damages would not have been inflicted without the use of the motor vehicle.

[97] *Id.*

[98] *Compare Aetna Cas. & Sur. Co. v. McMichael*, 906 P.2d 92 (Colo. 1995) *with Gardner v. Cont'l W. Ins. Co.*, 203 F.3d 834 (10th Cir. 2000) (unpublished).

[99] *State Farm Mut. Auto. Ins. Co. v. Kastner*, 77 P.3d 1256 (Colo. 2003).

[100] *Id.*

[101] *Roque v. Allstate Ins. Co.*, 318 P.3d 1 (Colo. App. 2012).

[102] *State Farm Mut. Auto. Ins. Co. v. Fisher*, 618 F.3d 1103 (10th Cir. 2010).

Chapter 8.02: Uninsured and Underinsured Motorist Claims in Colorado

In cases decided before *Kasuner*, because the applicable statutes do not define the "caused by accident" language in a policy and because the provision cannot contravene the minimum levels of coverage required in both sections 10-4-609 and 42-7-413(1)(c), the Colorado Supreme Court held that the language of this provision was ambiguous at best. It ruled that courts must determine "caused by accident" from the viewpoint of the victim.[103] Thus, a claimant injured by a shooting from another car sustained an injury "caused by accident" since the claimant did not expect or intend the shooting.[104] As long as there was a sufficient causal connection between the use of the motor vehicle and the injury, it made no difference whether it is an intentional tort flowing from the use of an uninsured vehicle or an act rooted in negligence that caused injuries to the insured innocent victim.[105] The fact that the passenger in the uninsured vehicle commits the assault did not change the result.[106]

### N. Exclusions from Coverage

The Colorado Supreme Court, in *DeHerrera v. Sentry Insurance Co.*,[107] severely limited the enforceability of exclusions to UM/UIM coverage. Finding that the restrictions based upon the vehicle were not specifically authorized by the UM statute, the court struck down such restrictions. As a result, the following UM/UIM exclusions are impermissible and void:

- Exclusions based on the type of vehicle the insured occupies at the time of injury.[108]
- Restriction of UM/UIM coverage according to the type of vehicle, even if the restriction was requested by the insured[109] and
- "Owned but not insured under the policy" (OBNI) exclusion.[110]

Exclusions for "regularly used non-owned vehicle" are also inconsistent with the UM/UIM statute, which does not authorize these exclusions, and with UM/UIM coverage, which protects persons, not vehicles.[111]

---

[103] *State Farm Mut. Auto. Ins. Co. v. McMillan*, 925 P.2d 785, 793-94 (Colo. 1996).

[104] *Cole v. United Servs. Auto. Ass'n*, 68 P.3d 513 (Colo. App. 2002).

[105] *McMillan*, 925 P.2d 785, 793-94 (Colo. 1996).

[106] *Cole*, 68 P.3d 513; *State Farm Mut. Auto. Ins. Co. v. Tye*, 931 P.2d 540 (Colo. App. 1996).

[107] *DeHerrera v. Sentry Ins. Co.*, 30 P.3d 167 (Colo. 2001).

[108] *Id.*

[109] *Bernal v. Lumbermens Mut. Cas. Co.*, 97 P.3d 197 (Colo. App. 2003), *cert. denied*.

[110] *Jaimes v. State Farm Mut. Auto. Ins. Co.*, 53 P.3d 743 (Colo. App. 2002), relying on *DeHerrera*, 30 P.3d 167, which disapproved of *Williams-Diehl v. State Farm Fire & Cas. Co.*, 793 P.2d 587 (Colo. App. 1989) and *Arguello v. State Farm Mut. Auto Ins. Co.*, 599 P.2d 266 (Colo. App. 1979).

[111] *See DeHerrera*, 30 P.3d 167.

Only restrictions expressly authorized by statute, such as named driver exclusions,[112] are valid in effectively defeating UM/UIM coverage.[113] For example, if an insurer were to attempt to restrict UM/UIM coverage based on something not expressly authorized by statute, such as age or geography, such restriction would be void.[114]

However, the reach of these decisions may be limited to the named insureds and their resident relatives and may not bar all vehicle restrictions as to permissive users.[115] But with regard to all classes of insureds, insurers must offer UM/UIM coverage that is coextensive in scope (class protected) and amount with liability coverage.[116] For example, if insureds are covered for liability purposes while "using" a vehicle, the requirement that they be "occupying" the vehicle for UM/UIM purposes is impermissible.[117] Additionally, an insurance carrier is required to offer the named insured UM/UIM coverage providing other insureds with the same amount of UM/UIM coverage as the named insured and resident relatives. Failure to do so renders the "step-down" provision unenforceable.[118] Conversely, because an insurer is not required to cover territories outside the U.S., and is not prevented from excluding territories such as Mexico from liability coverage, there is no requirement that more extensive territorial coverage for UM/UIM be offered.[119]

The law requires an insurer to disclose conspicuously and specifically any reductions in coverage to provide adequate notice to an insured in the context of insurance policy renewals of any deduction of coverage in the policy. If it fails to provide adequate notice, then it cannot rely on such a limitation to avoid liability.[120]

---

[112] *Massingill v. State Farm Mut. Auto. Ins. Co.*, 176 P.3d 816 (Colo. App. 2007).

[113] *See DeHerrera*, 30 P.3d 167.

[114] *Id.*

[115] *Farmers Ins. Exch. v. Anderson*, 260 P.3d 68 (Colo. App. 2010).

[116] *Aetna Cas. & Sur. Co. v. McMichael*, 906 P.2d 92 (Colo. 1995); *Richardson v. Farmers Ins. Exch.*, 101 P.3d 1138 (Colo. App. 2004), and C.R.S. § 10-4-609(2).

[117] *McMichael*, 906 P.2d 92.

[118] *Richardson*, 101 P.3d 1138; *see also Pacheco v. Shelter Mut. Ins. Co.*, 583 F.3d 735 (10th Cir. 2009).

[119] *Gonzales v. Allstate Ins. Co.*, 51 P.3d 1105 (Colo. App. 2002).

[120] *Shelter Mut. Ins. Co. v. Mid-Century Ins. Co.*, 246 P.3d 651 (Colo. 2011).

Chapter 8.03: Uninsured and Underinsured Motorist Claims in Colorado

## 8.03 THE UM/UIM POLICY

### A. Fault-Oriented Coverage

UM/UIM and UMPD are fault-oriented. The wording of the statute and the language of typical policies establish this proposition.[121] Tort matters such as breach of duty, causation, comparative negligence, affirmative defenses and damages, as well as the contract questions of whether claimants were "insureds" under the policy, whether the policy was in effect at the time of the collision and whether other exceptions and exclusions under the policy apply, are all initially at issue. On the contract issues, the UM carrier has a right to a jury trial.[122] The carrier's right to participate in the tort issues involving an uninsured motorist is limited and must be no more extensive than necessary to preserve the balance between the insurance provider's interest in receiving a fair hearing on its legitimate defenses[123] against the insurance provider's duty[124] to the insured and the insured's right to undiluted UM recovery. Regardless of whether original complaint named the UM insurance provider or the provider intervened in an action against the uninsured motorist, the insurance provider has the burden to set forth specifically and with particularity the legitimate defenses it intends to raise to the tort issues. It must demonstrate that its interest in a fair hearing on its legitimate defenses will be unprotected without greater participation in the proceedings.[125]

---

[121] No automobile liability or motor vehicle liability policy . . . shall be delivered . . . in this state . . . unless coverage is provided therein . . . for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom . . .

Uninsured motorist coverage shall include coverage for damage for bodily injury or death which an insured is legally entitled to collect from the owner or driver of an underinsured motor vehicle...

C.R.S. § 10-4-609(1)(a) and (4). Additionally, insurance contracts almost always contain standard language requiring the insured to be "legally entitled to recover" from an uninsured motorist as a prerequisite to recovering from the UM/UIM carrier. . . .

[122] *State Farm Mut. Auto. Ins. Co. v. Brekke*, 105 P.3d 177 (Colo. 2004).

[123] An insurer must plead its legitimate defenses with particularity applicable to pleading special matters involving fraud or mistake. *Id.* at n. 20.

[124] While described as a "quasi-fiduciary" duty in *Brekke*, 105 P.3d 177, this characterization has been eschewed with regard to first-party coverage. *Brodeur v. Am. Home Assur. Co.*, 169 P.3d 139 (Colo. 2007). The legislature, however, apparently recognized that the insured is in no better position vis à vis the insurance company than in the third-party context, provided substantial additional remedies for unreasonable denial or delay of first-party benefits. C.R.S. §10-3-1115 and 1116.

[125] *Brekke*, 105 P.3d 177. But see *Sunahara v. State Farm Mut. Auto. Ins. Co.*, 280 P.3d 649, 657 (Colo. 2012), where the majority opinion glossed over the first-party contract aspect of UM/UIM claim and characterized the insurer as essentially standing in the shoes of the tortfeasor to rule that the disclosure obligations of the carrier with respect to the insurance claim file are the same as in the third-party context. Note that where appropriate, bringing the C.R.S. §10-3-1115 and 1116 and/or bad faith action in the suit for UM/UIM benefits allow discovery that will be helpful to both claims that may otherwise be withheld. *See Sunahara* at 659-660 (Bender, J. concurring in part, dissenting in part).

## B. UM Statute Controls the Policy

The policy always must be read in conjunction with the UM/UIM statute because statutory provisions are controlling.[126] Where an insurer inserts language inconsistent with the statute, the statute supersedes the policy.[127] The express purpose of the uninsured motorist statute is to enable the insured to gain compensation for damages resulting from the negligent conduct of an uninsured motorist to the same extent as a loss resulting from the negligent conduct of an insured motorist.[128] UM/UIM coverage serves, in essence, as a replacement policy for that of the financially irresponsible tortfeasor.[129] Thus, provisions in a policy that attempt to reduce or condition coverage required by the statute are void.[130]

## C. Persons Entitled to Coverage

Persons entitled to UM/UIM coverage by statute are typically the same persons entitled to compensation under other policy provisions. Policies ordinarily specify that the named insured, resident relative of the insured, permissive operators and occupants of the vehicle are all eligible for UM/UIM benefits. The Colorado Supreme Court has ruled that C.R.S. § 10-4-609 does not permit an insurer to offer UM/UIM coverage whereby the covered class is more narrow than the class receiving liability coverage under the policy.[131] Where the insurance policy extends liability coverage to permissive users, but attempts to narrow the class protected for UM/UIM purposes to those persons occupying the vehicle, it violates public policy.[132] Because resident relatives are in the class that must be protected for liability purposes, an attempt to narrow the class by defining "resident relatives" as only those resident relatives who did not own vehicle that was not insured under the policy was unenforceable and void as against Colorado public policy.[133]

The "resident relative" provision of most policies often provides compensation where clearly none would otherwise be available. Whether a person, particularly a young adult, is a "resident" of the named insured's household is often the subject of dispute, the determination of which

---

[126] *DeHerrera v. Sentry Ins. Co.*, 30 P.3d 167 (Colo. 2001).

[127] *Id.*

[128] *Garceau v. Iowa Kemper Ins. Co.*, 859 P.2d 243 (Colo. App. 1993), citing *Kral v. Am. Hardware Mut. Ins. Co.*, 784 P.2d 759 (Colo. 1989).

[129] *DeHerrera*, 30 P.3d 167.

[130] *See, e.g., Newton v. Nationwide Mut. Fire Ins. Co.*, 594 P.2d 1042 (Colo. 1979). In *Newton* the court refused to allow the insurer to setoff PIP benefits from the amount of UM benefits awarded. *See also Barnett v. Am. Fam. Mut. Ins. Co.*, 843 P.2d 1302 (Colo. 1993) where the court invalidated deduction of Social Security Disability benefits from UM/UIM benefits.

[131] *Aetna Cas. & Sur. Co. v. McMichael*, 906 P.2d 92 (Colo. 1994); *see also Richardson v. Farmers Ins. Exch.*, 101 P.3d 1138 (Colo. App. 2004); and *Pacheco v. Shelter Mut. Ins. Co.*, 583 F.3d 735 (10th Cir. 2009).

[132] *McMichael*, 906 P.2d 92.

[133] *Pacheco*, 583 F.3d 735.

turns upon the facts.[134] The federal court predicted that the Colorado Supreme Court would adopt the majority rule that a child has dual residency if contacts with the noncustodial parent's house are substantial.[135] A resident relative may be denied UM/UIM coverage when the policy also excludes the person from liability coverage because of a poor driving record, because named driver exclusions are authorized by statute.[136]

The officer of a corporate policyholder and employee of the corporation who was also the wife of the sole shareholder was held to be a family member for purposes of UM/UIM coverage under the corporation's policy where the insurance policy provisions, if read literally would result in illusory coverage.[137] The court distinguished this case and did not extend coverage to a corporate officer struck by a car while riding his bicycle for personal reasons. There the insurance policy provided "family member" coverage if the named insured was an individual, but also provided coverage to corporate insureds for anyone occupying the covered automobile.[138]

An unusual situation arose when the plaintiff, an adult, was on a bus during an accident with another vehicle. The collision killed her mother. Her mother's body rested on the plaintiff for the two hours it took to extricate the plaintiff from the bus. She sustained physical injuries and claimed she was in the zone of danger, and she suffered severe emotional distress from witnessing the death of her mother. After the plaintiff recovered benefits from the tortfeasor's insurance company, she made a UIM claim under her parents' auto insurance policy. She did not reside with her parents. The court of appeals ruled that she did not fall within the defined categories of named insureds under the policy. The court rejected that claim because the plaintiff was seeking damages for her own emotional injuries, not any of those that are consequences or results of injury to the insureds in the policy (e.g., loss of consortium or wrongful death).[139] Another court held that emotional injury, absent physical manifestation of the injury, is not a "sickness" for which the UM statute requires coverage.[140]

---

[134] See, e.g., Ackerman v. Foster, 974 P.2d 1 (Colo. App. 1998); and Potter v. State Farm Mut. Auto. Ins. Co., 996 P.2d 781 (Colo. App. 2000).

[135] Am. Std. Ins. Co. v. Saraismo, 298 F. Supp. 2d 1092 (D. Colo. 2003); cf. Midwest Mut. Ins. Co. v. Titus, 849 P.2d 908 (Colo. App. 1993).

[136] Massingill v. State Farm Mut. Auto. Ins. Co., (Colo. App. 2007).

[137] Hawkeye-Security Ins. Co. v. Lumbrecht & Sons, Inc., 852 P.2d 1317 (Colo. App. 1993).

[138] Gen. Ins. Co. of Am. v. Smith, 874 P.2d 412 (Colo. App. 1993). See also Farmers Ins. Exch. v. Anderson, 260 P.3d 68 (Colo. App. 2010) and Gardner v. Cont'l W. Ins. Co., 203 F.3d 834 (10th Cir. 2000) (unpublished).

[139] Wieprzkowski v. State Farm Mut. Auto. Ins. Co., 976 P.2d 891 (Colo. App. 1999).

[140] Williams v. State Farm Mut. Auto. Ins. Co., 195 P.3d 1158 (Colo. App. 2008).